**CITY OF MICHIGAN CITY and Michigan City Park and Recreation Board, Appellants (Defendants below),**

v.

**WASHINGTON PARK AMUSEMENT CORP., Appellee (Plaintiff below).**

No. 3–575A79.

Court of Appeals of Indiana, Third District.

Jan. 16, 1979.

Dissenting Opinion Jan. 26, 1979.

Rehearing Denied March 9, 1979.

Craig V. Braje, Steven J. Henry, Deputy City Atty., Michigan City, for appellant City of Michigan City.

Patrick E. Donoghue, Michigan City, for appellant Michigan City Park and Recreation Board.

John E. Newby, Edward L. Volk, Newby, Lewis, Laminski & Jones, LaPorte, Paul Reed, Knox, for appellee.

HOFFMAN, Judge.

Defendants-appellants City of Michigan City and Michigan City Park and Recreation Board appeal from the judgment of the trial court entered on plaintiff-appellee's Washington Park Amusement Corp. (Amusement Park) motion to correct errors in which the court found that a jury verdict in favor of appellants was clearly erroneous and contrary to the evidence and that Amusement Park was entitled to a new trial on the issue of damages relating to appellants' breach of a buy-sell agreement.

Appellants contend on appeal that the trial court erred in granting Amusement Park's motion to correct errors.

The evidence discloses that Michigan City and the Park Board entered into a 20-year lease arrangement with Amusement Park's predecessor in title whereby Amusement Park was leased certain lands in which to operate and maintain a bath house and food concession building and amusement rides. The lease was modified by written amendment on February 17, 1966 and on March 16, 1967. The latter modification changed the rental provisions so that Amusement Park would pay the greater of $10,000 annually or a specified percentage of gross sales income from amusement rides.

The lease specifically gave appellants the right to charge a fee for parking in any of the parking areas of Washington Park. In June 1970, the parking fees for buses bringing patrons into the park was increased by the Park Board from $10 to $25. On December 30, 1971, Amusement Park filed suit alleging that the increased parking fees constituted a breach of the cooperation clause of the lease. Before Amusement Park's suit reached trial, the parties began discussions through a neutral party called the Ad Hoc Committee regarding the termination of the lease.

A group of concerned citizens formed the Ad Hoc Committee in late 1971 or early 1972 for the purpose of defining areas of civic problems and taking action to help resolve those problems. One of the areas which arose from the committee discussions concerned the implementation of the Lake Front Beautification Program. O. Jerrold Winski, David Gring, George Averick and Dr. Carl Golightly were the members of the Ad Hoc Committee who became involved with the lake front program. The Ad Hoc Committee desired to implement Phase 2 of the lake front plan. This plan called for the elimination of Amusement Park from the lake front area.

David Gring approached the Michigan City mayor to seek his approval of the plan and for permission to contact both Amusement Park and Park Board in an attempt to negotiate the settlement of the lease. After obtaining the mayor's permission to work in this area, the Ad Hoc Committee approached the parties to offer its assistance as a neutral party.

The committee first met with William Kenefick, President of Amusement Park, regarding a method to use to arrive at a valuation of the leasehold. As a result of this meeting, it was decided to have an appraisal made of the improvements on the property. The appraisal was made on April 5, 1972, and was subsequently paid for by the city.

The Ad Hoc Committee then had an informal meeting with the Park Board in February 1972. In April or May of 1972, Amusement Park contacted the Ad Hoc Committee with regard to the opening of the amusement park. The Ad Hoc Committee was instrumental in arranging for the amusement park to stay closed for the summer of 1972 in exchange for Park Board's agreement to waive rent.

The Ad Hoc Committee again approached the mayor and informed him of the status of the negotiations. The mayor then called an informal meeting of the Park Board and Michigan City Common Council in an attempt to get the Common Council's reaction to the termination of the lease. The councilmen wanted more time to examine the arrangement.

In late 1972 or early 1973, David Gring moderated another meeting between the mayor, the Park Board and the County Council concerning the implementation of the lake front plan and the termination of the lease with Amusement Park. The Common Council had a positive reaction to both areas.

It was determined to appropriate enough money through a bond issue to implement the lake front development, terminate the lease with Amusement Park and improve other recreation facilities in the community. As the bond issue proceeded, the Ad Hoc Committee dropped out of the picture. Resolutions were adopted in July through October of 1973 for the appropriation of $1,200,000 through a bond issue. However, this bond issue was defeated because of the failure of the proponents of the bond issue to outnumber remonstrators' signatures.

Also, prior to a time of an opening date for 1973, Amusement Park sold its rides.

On December 21, 1973, Park Board mailed notice to Amusement Park that it was in violation of the lease for nonpayment of rent for the year 1973 and for failure to maintain the premises. On December 26, 1973, Park Board moved to dismiss Amusement Park's 1971 complaint for lack of prosecution, which motion was subsequently denied. On April 25, 1974, Michigan City and the Park Board filed a counterclaim for possession of the real estate, rent for the year 1973, and damages for failure to maintain the premises. Appellants also filed an affidavit for immediate possession of the leasehold which was subsequently denied by the trial court. On October 18, 1974, Amusement Park filed its Answer to Counterclaim. On the same date Amusement Park also filed a Supplemental Complaint alleging inverse condemnation and unjust enrichment.

Trial to the jury resulted in a verdict for appellants and against Amusement Park in the sum of "$10,000 and all buildings." Amusement Park objected to the verdict, whereupon the trial court instructed the jury to return to the jury room and fill in the blank space of the form of verdict with a dollar amount only. The trial court again submitted two blank forms of verdict to the jury. The jury then returned a verdict in favor of appellants in the sum of $20,000. Appellants' motion for judgment on the verdict was granted. However, their motion for judgment of possession was taken under advisement. The trial court subsequently ruled on the issue of possession as follows:

"The defendants [appellants] have heretofore moved for judgment by the Court, granting defendants possession of the real estate involved in this lawsuit. This is a question in Equity to be decided by the Court independently of any jury. "The Court having heard all of the testimony, finds no breach of lease on the part of plaintiff [Amusement Park] and defendants' Motion for Judgment of possession is overruled."

Amusement Park filed its motion to correct errors on January 3, 1975, which alleged, *inter alia,* that the verdict of the jury was excessive, contrary to law and not supported by sufficient evidence. On January 31, 1975, the trial court entered the following ruling:

"Plaintiff having filed its Motion to Correct Errors, and the Court having heard argument from both sides, now finds certain facts are either undisputed or have been proved by evidence so strong that logical, unbiased legal minds cannot disagree.

"The Court finds that the verdict of the nonadvisory jury is clearly erroneous and contrary to the evidence.

"The Court further finds that the evidence on the issue of damages was mostly based on other alleged breaches and is not sufficient for the Court to base a judgment and a new trial should be held for that purpose.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that defendants have breached the buy-sell agreement, whereby defendants agreed to buy from plaintiff the leasehold interest held by Washington Park Amusement Corporation, assignee of Bergerson Enterprises, Inc., by virtue of a lease executed May 20, 1965, and amendments thereto, pertaining to certain real estate and improvements situated in Washington Park area in Michigan City, Indiana; and that plaintiff recover of and from defendants on said breach.

"IT IS FURTHER ADJUDGED that a new trial is granted to plaintiff on the issue of damages, if any, sustained by plaintiff as a result of said breach."

Thereafter, appellants filed their motion to correct errors, which was subsequently denied, and this appeal follows.

Ind.Rules of Procedure, Trial Rule 59(E), provides, in part, as follows:

"The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the

following with respect to all or some of the parties and all or some of the issues:

\* \* \* \* \* \*

"(7) In reviewing the evidence, *the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence;* and *shall enter judgment,* subject to the provisions herein, *if the court determines that the verdict of a nonadvisory jury is clearly erroneous as contrary to or not supported by the evidence,* or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence." (Emphasis supplied.)

■ This rule delineates the court's power to grant different kinds of specific relief when reviewing the evidence. If, in examining the evidence, the court determines that it was insufficient to establish a prima facie case, the court must order final judgment to be entered unless such relief is shown to be impracticable, unfair to any of the parties or otherwise improper. 4 Harvey & Townsend, *Ind.Pract.—Rules of Civ. Proc.,* Civil Code Study Commission Comments—Rule 59(E), at 116–17 (1971).

■ This portion of Trial Rule 59(E)(7) is closely related to Ind.Rules of Procedure, Trial Rule 50(A) and applies to the situation commonly known as a judgment notwithstanding the verdict. The trial court must view only the evidence and reasonable inferences most favorable to the nonmoving party and may enter judgment only if there is no substantial evidence or reasonable inference to support an essential element of the claim. *Huff v. Travelers Indem. Co.* (1977), Ind., 363 N.E.2d 985. When considering whether to enter judgment contrary to the jury verdict, the trial court may not weigh the evidence.

■ If the trial court is convinced that the weight of the conflicting evidence preponderates against the jury's verdict, it should order a new trial. Trial Rule 59(E)(7). In determining whether to grant a new trial, the trial judge sits as a "thirteenth juror." In so doing, the trial judge may weigh the conflicting evidence and determine the credibility of witnesses. After sifting through the evidence in this manner, the trial judge should grant a new trial if he believes that a contrary result should have been reached in the minds of reasonable men. *Huff v. Travelers Indem. Co., supra;* 4 Harvey & Townsend, *Ind.Pract.—Rules of Civ.Proc.,* Civil Code Study Commission Comments—Rule 59(E), *supra.*

In the case at bar, the original judgment entered on the jury's corrected verdict was against Amusement Park on its complaint and for appellants on their counterclaim. In granting Amusement Park's motion to correct errors, the trial court found that the "verdict of the nonadvisory jury is clearly erroneous and contrary to the evidence." The trial court then made the following relevant findings:

"8. Citizens, realizing the problems within the City and Washington Park area, formed a committee to work on said problems; said committee was known as the Ad-Hoc Committee.

"9. In early 1972, the Ad-Hoc Committee realized a communication problem or emotional antagonism between plaintiff and defendants. Said committee kept all parties physically apart and negotiated a buy-sell agreement between plaintiff and defendants, whereby defendants would buy and plaintiff would sell the remaining interest of the lease between the parties. (See testimony of Jerry Winski and David Gring plus Exhibits 23, 24, 25, and 26, being minutes of the defendant, Park and Recreation Board)

"10. The defendant, Park and Recreation Board, passed all necessary resolutions to implement the bond issue to consummate said purchase, and requested the said defendant, City, to so proceed. (See above named Exhibits)

"11. The defendant, City, passed the bond resolution and proceeded with the bond issue, including the carrying, signing, and certifying of petitions. (Undisputed testimony)

"12. The defendant, Park Board, passed an additional appropriation resolution appropriating the money to be realized from the bond sale so that it could be used to complete said buy-sell agreement as well as other projects. (Minutes of Park Board, Exhibits 24 and 26)

"13. Defendants caused an appraisal of the leasehold interest of the Washington Park Amusement Grounds of plaintiff to be made, (Exhibit 30) which was made as of July 10, 1973, and submitted August 28, 1973.

"14. The buy-sell agreement contained the provision that the amusement park would remain closed. (See testimony of David Gring, also statement of Mr. Burns contained in Park Board Minutes of December 20, 1973, Exhibit 31. Stipulation 5 shows Board waives rent for 1972.)

"15. Plaintiff kept the amusement park closed during 1972, 1973 and 1974.

"16. The bond issue to purchase the leaehold [sic] interest of plaintiff and other projects was defeated in 1973 by a sufficient number of signatures on remonstrances.

"17. Plaintiff sold his rides in the summer of 1973.

"18. The defendants did not make their payment to plaintiff to complete the buy-sell agreement.

"19. Plaintiff had lost all customers by being closed for two seasons and could not financially reopen after defendants' failure to pay.

"20. Rent, under the lease and amendments as stated, to be paid by plaintiff to defendants was $10,-000.00 per year. Without a waiver, the 1974 rent was not delinquent at the time of trial. All rent for 1972 was specifically waived by the defendant, Park Board, (Stipulation No. 5) and all rent due from plaintiff to defendants for years 1965–1971, inclusive, had been paid in full by plaintiff. (Stipulation No. 6)

"The Court finds that there was a buy and sell agreement between plaintiff and defendants which was breached by defendants, and even if the rent for 1973 was not specifically or impliedly waived, it could be no more than a set-off against damages owed by defendants.

"The Court further finds that the verdict of the nonadvisory jury is clearly erroneous and contrary to the evidence.

"The Court further finds that the evidence on the issue of damages was mostly based on other alleged breaches and is not sufficient for the Court to base a judgment and a new trial should be held for that purpose.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that defendants have breached the buy-sell agreement, whereby defendants agreed to buy from plaintiff the leasehold interest held by Washington Park Amusement Corporation, assignee of Bergerson Enterprises, Inc., by virtue of a lease executed May 20, 1965, and amendments thereto, pertaining to certain real estate and improvements situated in Washington Park area in Michigan City, Indiana; and that plaintiff recover of and from defendants on said breach.

"IT IS FURTHER ADJUDGED that a new trial is granted to plaintiff on the issue of damages, if any, sustained by plaintiff as a result of said breach."

An analysis of the trial court's action indicates that the existence of a buy-sell agreement was found as a matter of law in accordance with the "clearly erroneous" standard.

Appellants initially argue that the issue of a buy-sell agreement was never presented to the jury for its deliberation. Ind. Rules of Procedure, Trial Rule 51(B), provides, in part, as follows:

"After argument the judge shall instruct the jury as to the law upon the issues presented by the evidence."

*See also: Wolff v. Slusher* (1974), Ind. App., 314 N.E.2d 758; *Bd. of Com'nrs, etc. v. Flowers* (1964), 136 Ind.App. 597, 201 N.E.2d 571 (transfer denied); 3 Harvey, *Ind.Pract.—Rules of Civ.Proc.,* Civil Code Study Commission Comments—Rule 51(b), at 399 (1970). Preliminary Instruction No. 4 and Final Instruction No. 2 inform the jury of the lease agreement and state that Amusement Park claims appellants breached the lease by taking actions which prevented people from coming to the amusement park and that appellants claim that Amusement Park breached the lease by nonpayment of rent and failure to maintain the premises. Nowhere do the instructions specifically instruct the jury on a buy-sell agreement. Even Final Instruction No. 18, tendered by appellants, does not refer to a buy-sell agreement in its discussion of contracts, and would not necessarily be understood by the jury to refer to such buy-sell agreement. *See: Wolff v. Slusher, supra; Bates v. Boughton* (1972), 151 Ind.App. 139, 278 N.E.2d 316. However, even if it is assumed that the jury was instructed on such an agreement, the verdict of the jury would have been a finding against Amusement Park as to the existence of such agreement. Accordingly, the trial judge could only enter judgment for Amusement Park on the basis of such agreement if the evidence was "clearly erroneous as contrary to or not supported by the evidence."

■ The trial court erred in finding the existence of a buy-sell agreement as a matter of law. IC 1971, 18–1–6–8 (Burns Code Ed.), provides, in part, as follows:

"No executive department, officer or employee thereof shall have power to bind such city to any contract or agreement, or in any other way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purposes of such department; and all contracts and agreements, express or implied, and all obligations of any and every sort, beyond such existing appropriations are declared to be absolutely void: . . Provided, further, That nothing herein contained shall prevent any such department from issuing any bond or other obligation expressly authorized by this act and provided for by ordinance."

Appellants argue that since the bond issue was defeated by public remonstrance, any buy-sell agreement was rendered void under the foregoing provision. In support of this contention, appellants cite 20 I.L.E. Municipal Corporations, § 165, at 464, wherein it is stated that an appropriation must precede the contract and be made in the manner prescribed by law in order for the contract to be valid.

The resolutions of the Park Board specifically state that the Park Board did not have sufficient funds in existence to buy Amusement Park's leasehold interest and that the proceeds of the bond issue were to be appropriated for such purpose. Consequently, there was no appropriated fund in existence from which the purchase of the leasehold interest could be paid. The bond issue was the vehicle by which such funds were to be obtained. When the bond issue was defeated, there was clearly a lack of funds.

In *Hamer v. City of Huntington* (1939), 215 Ind. 594, 21 N.E.2d 407, our Supreme Court stated that a city ordinance authorizing the Board of Public Works and Safety to purchase fire equipment and providing that the necessary expense be raised by taxes to be levied or bonds to be issued did not constitute a sufficient appropriation so as to validate a contract entered into prior to the enactment of such ordinance. The Court reasoned that the provisions, then in effect, governing the procedure to be followed by a municipality in making additional appropriations were mandatory and must be complied with before an ordinance is valid.

This same reasoning applies with equal force under the present statutes. IC 1971, 19–7–4–39 (Burns Code Ed.), permits a Park and Recreation Board to acquire land and make improvements thereon and IC 1971, 19–7–4–40 (Burns Code Ed.), governs the procedure for issuing bonds in order to

raise funds to pay therefor. IC 1971, 19–7–4–40, *supra,* further provides that "[t]he provisions of all general laws relating to the filing of a petition requesting the issuance of bonds, the right of taxpayers to remonstrate against the issuance of bonds, the appropriation of the proceeds of the bonds and approval thereof by the state board of tax commissioners, and the sale of bonds at public sale at not less than the par value thereof shall be applicable to proceedings under this act." IC 1971, 6–1–46–7 (Burns Code Ed.),[1] provides that a bond issue may be defeated by a greater number of people filing a remonstrance than those filing a petition favoring the bond issue.

Consequently, the Park Board could not appropriate the money from a bond issue until it had the proceeds thereof. If the bond issue is defeated, as in the case at bar, there is no method in which to obtain the funds. Thus, any buy-sell agreement was absolutely void and the trial court erred in its finding thereon.

██ The trial court also found against appellants on their counterclaim for rent. The lease provided a minimum annual rent of $10,000 and the parties stipulated that no money was paid for 1973 rent after receipt of notice of the default in rent payment. However, there is conflicting evidence as to whether the rent for 1973 was expressly or implicitly waived. The trial court's actions reveal that it believed the evidence in this regard preponderated against the jury verdict. Consequently, a new trial on these issues would be proper.

Accordingly, the judgment is reversed and a new trial ordered on Amusement Park's complaint and appellants' counterclaim in proceedings not inconsistent with this opinion.

Reversed.

ROBERTSON, J., participating by designation, concurs.

STATON, J., dissents with opinion to follow.

STATON, Judge, dissenting.

I dissent from the majority opinion for two reasons. First, the majority opinion treats the buy and sell agreement entered into by the City and Park as an isolated, distinct, and totally unrelated transaction instead of an integral part of the lessor-lessee relationship. The majority opinion adopts the rationale that since the buy and sell agreement can not be carried out by the City under the statute that the City is immune from damages for its actions relating to a previously executed, valid lease. Yet, the evidence clearly shows that Park was induced by the City to suspend its operations as an amusement park until the City could obtain the appropriations to complete the buy and sell agreement. Finding 14 of the trial court's judgment states:

"14. The buy-sell agreement contained the provision that the amusement park would remain closed. (See testimony of David Gring, also statement of Mr. Burns contained in Park Board Minutes of December 20, 1973, Exhibit 31. Stipulation 5 shows Board waives rent for 1972.)"

The buy and sell agreement was an amendment to a valid lease executed by the City and Park. As an amendment to the lease, Park was bound to keep the amusement park closed during the financial arrangements by the City.

The majority opinion concentrates its rationale upon the validity and enforceability of the buy and sell agreement. This approach is specious and superficial, since it ignores the City's position to enforce the closing down provision of the buy and sell agreement against Park. Assuming that the buy and sell agreement can not be consummated for statutory reasons, it does not follow that the actions of the City in an effort to consummate the buy and sell agreement may be totally disregarded when considering the question of damages to Park. Until the remonstrance was made, Park had a right to remain open under the

---

1. The *Hamer* decision stated that Acts 1937, ch. 119, which was codified at the time of this suit at IC 1971, 6–1–46–1 *et seq.* (Burns Code Ed.), was mandatory.

lease and to realize a profit from its operations. As the trial court concluded, there was insufficient evidence submitted upon these damages to render a judgment. Therefore, the trial court was correct in granting a new trial as to damages.

Secondly, the majority opinion unduly restricts the implementation of the "thirteenth juror" rule, and it attempts to amend Ind.Rules of Procedure, Trial Rule 59(E). Its rationale nullifies all the evidence concerning the buy and sell agreement which may have any affect upon damages. Its rationale effectively accomplishes what the City was unable to do when it filed a motion in limine before trial. The City's motion in limine sought to exclude all references to the waiver of rental payments in 1972, to the Ad-Hoc Committee, to the buy-sell agreement, to the bond issue, to appraisals of improvements on the leasehold, to plans for other uses of the land, and to representations made to Park by the City in an informal way. The trial court properly denied the City's motion in limine addressed to this evidence. Park's supplemental complaint and the evidence at trial brought the entire relationship between Park and the City into controversy.[1]

The verdict of the jury was beyond the scope of the evidence. The $10,000.00 per year rent for 1972 had been expressly waived. This waiver of rent was stipulated by the parties. Whether the rent for 1973 was expressly waived or impliedly waived was disputed. The rent for 1974 was not due under the lease at the time of trial; therefore, a jury verdict for $20,000.00 was beyond the scope of the evidence. *Weenig v. Wood* (1976), Ind.App., 349 N.E.2d 235. After making 20 findings of fact, the trial court concluded that:

> "[T]he evidence on the issue of damages was mostly based on other alleged breaches and is not sufficient for the court to base a judgment and a new trial should be held for that purpose."

The majority opinion treats the conclusion of the trial court as an attempt to enforce an unenforceable buy and sell agreement. This treatment, a question of law rather than evidence, is not supported by a careful reading of the entire judgment. The new trial is granted not to enforce a buy and sell agreement but to obtain additional evidence as to Park's damages which resulted from those parts of the buy and sell agreement already performed by Park. A fair and just judgment can only be rendered by the trial court when it is permitted by this court to hear the additional evidence on Park's damages. For these reasons, I would affirm the trial court's judgment.

---

1. Moreover, Park moved to amend the complaint to conform to the evidence. The trial court granted the motion. *See Ayr-Way* *Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335.