**Frank D. ELSPERMAN and Connie E. Elsperman, Parents of DeWayne G. Elsperman, deceased, Plaintiffs-Appellants,**

v.

**Norman A. PLUMP and the Loyal Order of the Moose—Lodge # 85, Defendants-Appellees.**

No. 1–782A202.

Court of Appeals of Indiana, First District.

April 7, 1983.

Rehearing Denied May 13, 1983.

---

Charles C. Griffith, Johnson, Carroll & Griffith, Evansville, for plaintiffs-appellants.

Thomas G. Krochta, Vanstone & Krochta, Evansville, for defendants-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Frank D. and Connie E. Elsperman, parents of DeWayne G. Elsperman, appeal from a judgment of the Vanderburgh Superior Court setting aside a jury verdict in their favor and entering a judgment for Norman A. Plump and The Loyal Order of Moose, Lodge # 85 in a wrongful death

action brought by Elspermans. We reverse and remand.

## FACTS

On April 20, 1981, DeWayne Elsperman, born December 17, 1979, was killed in a collision involving an automobile driven by his mother and in which he was a passenger and a car driven by one James Ewers. The collision occurred about 9:50 P.M.

Ewers had consumed about one and one-half fishbowls [1] of beer between 3:15 or 3:30 and 4:45 P.M. at a tavern in Evansville. He then drove to some golf links, stayed 30–40 minutes, then went to the Moose Lodge where he stayed until around 9:45 P.M. While at the Moose, Ewers was served five or six mixed drinks of whiskey and ginger ale. Plump was the bartender who served Ewers. Ewers ate only some potato chips. One John James arrived around 8:15 to 8:30 P.M. Ewers was served two drinks after James's arrival. James observed that Ewers was loud and boisterous, but not vulgar, and Ewers put his arm around James telling him how much he loved him. This was typical of Ewers's behavior when drinking. Between 9:00 and 9:30 P.M., Ewers had a coughing spell and then staggered to the bathroom. Plump declined to serve Ewers alcoholic beverages after that.

James, in the presence and hearing of Plump, offered to drive Ewers home but Ewers refused saying he was going to the Amvets. James, who also served part-time as a bartender at the Moose, thought Ewers was intoxicated, but indicated he would have served Ewers. Plump thought Ewers was a "little intoxicated" when he left. When Ewers left, near 9:50 P.M., both Plump and James followed him outside and observed him drive away. A few seconds after Ewers left the Moose drive and entered onto Upper Mt. Vernon road, he crossed over the centerline striking the Elsperman car which resulted in DeWayne's death.

Police arrived at the accident scene about 10:00 P.M. They noticed a strong odor of alcohol about Ewers. Ewers's eyes were bloodshot, his speech was slurred, he had difficulty with motor functions, and had considerable difficulty in removing his driver's license from his wallet, finally succeeding after many tries. He refused a chemical test for intoxication. In the opinion of one officer, Ewers was very intoxicated.

Immediately following the collision, Plump, the bartender, told James to stay out of it and to keep his mouth shut.

Elspermans sued Ewers, Plump, and the Moose for damages for the wrongful death of their son. Ewers admitted liability. A settlement was reached with Ewers and the case proceeded against Plump and the Moose on the theory that they were negligent in serving alcoholic beverages to Ewers while he was, to their knowledge, intoxicated, in violation of Indiana Code Section 7.1–5–10–15. Trial was held on the issue of liability only. Motions for judgment on the evidence at the close of the plaintiffs' evidence and at the close of all the evidence were overruled. After the jury returned a verdict in favor of Elspermans on the liability issue, the court granted judgment on the evidence in favor of Plump and the Moose, and it is from this action that this appeal is taken.

## ISSUE

Did the trial court err in granting judgment on the evidence in favor of Plump and the Moose after a jury verdict for Elspermans?

## DISCUSSION AND DECISION

██ The limitations upon the authority of a trial judge in granting judgment on the evidence following a jury verdict have been clearly delineated. A trial court, in considering a motion for judgment on the evidence after a jury verdict, may consider only the evidence and inferences favorable to the non-moving party and may enter the judgment only if there is no substantial evidence or reasonable inference therefrom to support an essential element of the

1. According to the evidence, a "fishbowl" contains approximately twelve ounces of beer.

claim. In other words, there must be a complete failure of proof. To justify granting judgment on the evidence in such a case, the evidence must point unerringly to a conclusion not reached by the jury. *Huff v. Travelers Indemnity Co.,* (1977) 266 Ind. 414, 363 N.E.2d 985; *Bennett v. Craig,* (1981) Ind.App., 427 N.E.2d 722; *Stanley v. Kelley,* (1981) Ind.App., 422 N.E.2d 663, *trans. denied.* The trial court may not weigh the evidence in ruling on a motion for judgment on the evidence following a jury verdict. *Huff; Stanley; City of Michigan City v. Washington Park,* (1979) Ind. App., 384 N.E.2d 1063, *trans. denied.*[2]

The standard of appellate review in these cases is the same as the standard which guides the trial judge in ruling on motions for judgment on the evidence subsequent to a jury verdict, that is, whether there was evidence of probative value to support each essential element of the claim. If there is relevant evidence to support the claim, but the evidence conflicts, the verdict is not clearly erroneous, and judgment on the evidence notwithstanding the verdict is improper. *Huff; Stanley; Johnson.*

With the foregoing rules in mind, we proceed to a determination of whether the trial court's grant of judgment notwithstanding the verdict was erroneous.

Indiana cases have clearly established the rule that a seller of alcoholic beverages may be held liable for injuries inflicted by an intoxicated person as a result of his intoxication, where such result was reasonably foreseeable and the sale of the intoxicant was in violation of law. *Elder v. Fisher,* (1966) 247 Ind. 598, 217 N.E.2d 847; *Parrett v. Lebamoff,* (1980)

Ind.App., 408 N.E.2d 1344. This rule is supported by decisions in other jurisdictions. *Ono v. Applegate,* (1980) 62 Hawaii 131, 612 P.2d 533; *Adamian v. Three Sons, Inc.,* (1968) 353 Mass. 498, 233 N.E.2d 18; *Wiska v. St. Stanislaus Social Club, Inc.,* (1979) 7 Mass.App. 813, 390 N.E.2d 1133; *Lopez v. Maez,* (1982) 98 N.M. 625, 651 P.2d 1269; *Campbell v. Carpenter,* (1977) 279 Or. 237, 566 P.2d 893. We concur with the Supreme Judicial Court of Massachusetts that "the waste of human life due to drunken driving on the highways will not be left outside the scope of the foreseeable risk created by the sale of liquor to an already intoxicated individual." *Adamian,* 233 N.E.2d at 20. Like the Supreme Court of New Mexico we believe that "[i]n light of the use of automobiles and the increasing frequency of accidents involving drunk drivers, . . . the consequences of serving liquor to an intoxicated person whom the server knows or could have known is driving a car, is reasonably foreseeable." *Lopez,* 651 P.2d at 1276.[3]

Indiana Code Section 7.1–5–10–15 makes it unlawful to sell, barter, deliver, or give away an alcoholic beverage to an intoxicated person if the provider knows that the person is intoxicated. The predecessor of this statute, which was substantially the same, was involved in *Parrett.* The rule of the *Elder* and *Parrett* cases is not contested. It is conceded that any liability of Plump and the Moose is predicated upon negligence in serving alcohol to Ewers in violation of Indiana Code 7.1–5–10–15. The only contested issue is whether there was evidence from which the jury could have found that Plump served alcoholic beverag-

---

2. If the trial court believes the weight of conflicting evidence preponderates against the verdict, it should order a new trial. *City of Mighigan City v. Washington Park, supra; Johnson v. Bender,* (1977) 174 Ind.App. 638, 369 N.E.2d 936, *trans. denied.* Here, however, the trial court did not exercise its role as "thirteenth juror" and grant a new trial. Rather, the court's findings clearly reveal that the court found a total failure of proof on an essential issue and granted judgment notwithstanding the verdict. Hence, we review the propriety of that action.

3. In *Lopez v. Maez, supra,* the Supreme Court of New Mexico, in footnote 7, 651 P.2d at 1276, cited 1980 statistics from the National Safety Council showing that approximately half of all auto fatalities are the result of drunk driving; that more Americans are killed each year as the result of drunk driving than from any other accident; and that in 1980, approximately 26,300 persons were killed in the United States in drunk driving accidents.

es to Ewers knowing Ewers to be intoxicated.[4] There are many factors which can be considered in determining whether or not Ewers was intoxicated to Plump's knowledge, and thereafter served alcohol in violation of the statute. Among the evidence which the jury could have considered in determining this issue are Ewer's prior drinking and subsequent behavior in the bar, *Ono,* as well as the amount of alcohol consumed there. *Cimino v. Milford Keg, Inc.,* (1982) 385 Mass. 323, 431 N.E.2d 920; *Couts v. Ghion,* (1980) Pa.Super., 421 A.2d 1184. Evidence of the intoxicated party's condition shortly after leaving the tavern is also relevant for the jury's consideration. *Couts.*

We are aware of the decision in *Wiska,* cited by Plump and the Moose holding the evidence there insufficient to establish knowledge of intoxication and subsequent service of alcohol. The case of *Burns v. Bradley,* (1980) 120 N.H. 542, 419 A.2d 1069, also would tend to support their view of the evidence here. Nevertheless, we are persuaded that two cases from Pennsylvania are better reasoned and support our decision. *Jardine v. Upper Darby Lodge No. 1973, Inc.,* (1964) 413 Pa. 626, 198 A.2d 550; *Couts.*

In *Jardine,* the evidence showed that one Gross had been drinking for several hours, last at the lodge. He left the lodge at 4:15 A.M., and the accident happened at 4:29 A.M. A physician who examined him at 5:10 A.M. observed bloodshot eyes, speech thick, unsteady gait, poor coordination, and a strong smell of alcohol. Gross admitted to the doctor that he had drunk from ten to twenty bottles of beer. In addition, the investigating officer, only 14 minutes after Gross left the lodge, observed that Gross was visibly drunk. Another witness testified that he saw Gross drinking a beer at the lodge and that his eyes were bloodshot. The Supreme Court of Pennsylvania found

this evidence sufficient to support a finding of a violation of a Pennsylvania law forbidding the sale of alcoholic beverages to one "visibly intoxicated." We perceive no significant difference between the prohibition of the Pennsylvania statute and our own.

In *Couts,* the evidence revealed that Ghion attended a meeting at an establishment known as Holiday House where, between 2:00 and 3:30 P.M., he consumed eight cocktails. He then ate lunch and the meeting ended. About 5:00 P.M. he went to the bar at Holiday House where he was served two more drinks. He left at 5:15 P.M. The accident occurred at 6:00 P.M. Ghion's car had crossed the centerline, struck a pickup truck driven by the decedent, crossed back into the proper lane, then went back across the center and off the road. He made no attempt to use his brakes and was driving in the dark without lights. Police arrived within minutes and the officer saw Ghion staggering and detected a strong odor of alcohol. Ghion also fumbled through his wallet when attempting to produce his registration and his speech was slurred. The court stated that a liquor licensee may be held civilly liable for injuries proximately resulting from an unlawful sale of alcoholic beverages to a visibly intoxicated person. The court then reversed a non-suit in favor of Holiday House, saying:

"[W]e conclude that the issue of whether Ghion was visibly intoxicated when he was served his last drink at the Holiday House bar should have been submitted to the jury. Evidence presented at trial established that Ghion had consumed a substantial amount of alcohol before being served his last drink; that Ghion had driven erratically and without using his car's lights in the dark; and that Ghion had appeared intoxicated to the investigating police officer. Additionally, im-

---

**4.** We agree that the issue is not whether Ewers was intoxicated when he was served, but whether or not he was served after he was intoxicated and Plump had notice of his intoxicated condition. *Ono v. Applegate, supra; Campbell v. Carpenter, supra.*

Further, Plump admitted he knew Ewers was driving an automobile, consequently, there is no contest on that issue.

properly excluded evidence of Ghion's blood alcohol content (*see infra*) would have lent further support to an inference that Ghion may have been visibly intoxicated at the Holiday House bar. *Despite the lack of direct evidence bearing on Ghion's condition when he was served his last drink, we think that the jury could have reasonably concluded that he was visibly intoxicated at that time.* Accordingly, we hold that the lower court erred in refusing to take off the compulsory nonsuit entered in favor of Holiday House." (Emphasis added.)

421 A.2d at 1188.

Viewing the totality of the evidence in this case—the amount of alcoholic beverages consumed, the loud and boisterous conduct, the coughing spell and staggering to the bathroom, the offer of James to drive Ewers home, the admission of Plump that Ewers was a "little intoxicated," the fact that Plump followed Ewers out and observed him drive away, and Plump's admonition to James to keep his mouth shut—we believe there is sufficient evidence of probative value from which the jury could have inferred that Ewers was intoxicated and that Plump served him alcoholic beverages knowing of his intoxicated condition in violation of Indiana Code Section 7.1–5–10–15. Thus, there was not a complete failure of proof on the only contested issue. Granting judgment on the evidence following the verdict was error.

Judgment reversed. Cause remanded to trial court with instructions to reinstate the verdict and to enter judgment on the verdict.

ROBERTSON, P.J., and NEAL, J., concur.