Bonnie **DICKERSON**, Plaintiff-Appellee,

v.

**AMAX INC.**, Defendant-Appellant.

No. 83–1684.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1984.

Decided July 16, 1984.

W.C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant-appellant.

Eric A. Frey, Wolfe, Frey, Hunt & Olah, Terre Haute, Ind., for plaintiff-appellee.

Before PELL and POSNER, Circuit Judges, and PARSONS, Senior District Judge.[*]

PELL, Circuit Judge.

Defendant, AMAX Inc., a Connecticut corporation, appeals from the district court's denial of its motion for judgment notwithstanding the jury verdict of $10,000 in favor of plaintiff, Bonnie Dickerson, an Indiana resident. The diversity case arose out of defendant's blasting activities near Brazil, Indiana. Defendant requests this court to reverse the judgment below and remand to the district court with instructions to enter judgment in its favor. Defendant does not seek a new trial. The basis for the appeal is defendant's claim that the jury's verdict is contrary to the laws of nature and the uncontradicted evidence of the level of the forces produced by the blasting.

## I. THE FACTS

Defendant operated surface coal mines, which required blasting to facilitate extraction of the coal. Federal regulations require coal companies to monitor continuously their blasting activities to ensure that the blasts do not exceed certain levels. Defendant maintained a number of seismographs to monitor its blasts throughout the period when it operated the Brazil mine. The seismographs automatically recorded the force levels produced by the blasts. The unit of measurement used to record blast force at a given point is inches per second particle velocity.

Plaintiff had the house that is the subject of this suit constructed for her in 1970. The house is approximately one mile from the mine. Prior to the onset of blasting by defendant in 1977, plaintiff never noticed any structural defects in the house, such as cracked plaster, broken seals on thermopane windows, or a damaged chimney. In the months after defendant began to blast, however, plaintiff noticed all these defects, which worsened as the blasting continued. At one point, a bricklayer repaired plaintiff's severely cracked chimney, only to return the next day to discover that new cracks had already appeared. The bricklayer also testified that the damage he had repaired was not due to plaintiff's heating system, as defendant suggested; rather, he testified that, in his opinion, the damage arose from a series of shocks and vibrations.

In addition to the testimony concerning structural defects, there was testimony from a number of witnesses who were in plaintiff's house when blasting occurred. Plaintiff's guests described the blast-induced tremors in various terms. One witness, who had plaster dust fall into his coffee from the detonations, stated: "You could feel it coming out of the sky, and it shakes.... I don't know if anyone in the courtroom has ever felt that sensation; but you have to be there to feel the sensation." Another witness stated that the blasting "really rocked [the house] or you could say that it shook it or something like that." A third witness testified: "Well, it felt like an earthquake tremor, or an earthquake or whatever you want to say. The house and fixtures in the house rattled and the dishes rattled and I can remember the chandelier and the light fixtures that were hanging, swaying."

Plaintiff also testified about the effects of the blasts. On one occasion, the vibrations awakened her from a nap. Another

[*] James B. Parsons, Senior District Judge of the Northern District of Illinois, is sitting by designation.

time, two of defendant's representatives, who were present in the house at the time of a detonation, "were scared to death. You should have seen the looks on their faces. I don't know whether they thought the world was coming to an end or we had an earthquake or what." No company representative rebutted this testimony. Plaintiff's husband testified that once, while he was lying on the floor in front of the fireplace recuperating from an injury, an "extra big" blast moved the hewn mantle beam and almost knocked it off the wall as dust "flew out of everything." Plaintiff and her husband also testified as to how the cracks in the ceilings and walls continued to grow, and they testified about various repairs that they undertook.

Plaintiff and her husband made numerous attempts to obtain reimbursement for the repairs without resort to litigation, but defendant refused to admit responsibility for the damage to plaintiff's property. Plaintiff's two-count complaint contained a prayer for judgment in an amount sufficient to compensate for the physical damage to the house. Neither plaintiff nor her husband raised any claim of personal injury. Plaintiff also requested punitive damages, but the trial court directed a verdict for defendant on that part of her complaint, and she has not appealed the directed verdict.

Defendant's evidence consisted primarily of scientific testimony. Defendant provided its expert witnesses with the results of its blasting operations, as recorded by the seismographs maintained throughout the area. Defendant never attempted to install a seismograph in plaintiff's property. Readings were taken, however, at points between the blast site and the house. From the experts' knowledge of the specific geography of the area, the weight of each blast, and the seismographic results, they developed an equation to estimate the force that each blast should have produced at plaintiff's home. Defendant's witnesses testified as to the results of these calculations, but they did not place into evidence the formula used to derive those results. According to defendant's calculations, the

largest force that ever reached plaintiff's house measured 0.17 inches per second particle velocity.

Defendant also introduced evidence of scientific research that has suggested that all forces of less than 0.50 inches per second velocity are incapable of producing failure of materials. While the human body is able to discern forces at least as low as 0.05 inches per second particle velocity, defendant asserts that its blasting could not have produced any of the damage experienced by plaintiff.

On appeal, defendant contends that the district court erred when it denied defendant's motion for judgment notwithstanding the jury verdict and requests that we remedy the alleged error. In essence, defendant claims that, regardless of the testimony introduced by plaintiff, it had established two propositions without contradiction: first, that no blast with a force of less than 0.50 inches per second particle velocity could cause the damage that occurred at plaintiff's house; and, second, that the greatest force that ever reached plaintiff's house was no greater than 0.17 inches per second particle velocity. Defendant concludes that the jury must have rejected, without any rational basis, one of the two uncontradicted principles, and, therefore, the district court erred when it denied defendant's motion for judgment notwithstanding the verdict.

## II. THE DECISION

The litigants agree that the well-established rule in this circuit is that state law standards govern the review of a denial of a motion for judgment notwithstanding the verdict in diversity cases. *Oberman v. Dun & Bradstreet, Inc.*, 507 F.2d 349, 352 (7th Cir.1974). *See also Robison v. Lescrenier*, 721 F.2d 1101, 1103 n. 1 (7th Cir.1983) (questioning the efficacy of the circuit's *Erie* rule, but noting the lack of any practical difference between the federal and state standards of review); *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 970–71 (7th Cir.1983). The Court of Ap-

peals of Indiana has recently discussed the approach that both trial and appellate courts should take in response to a motion for judgment notwithstanding the verdict. *Elsperman v. Plump,* 446 N.E.2d 1027, 1029–30 (Ind.App.1983). As to appellate review, the court stated that the standard is "whether there was evidence of probative value to support each essential element of the claim. If there is relevant evidence to support the claim, but the evidence conflicts, the verdict is not clearly erroneous, and judgment on the evidence notwithstanding the verdict is improper." *Id.* at 1030. Under this standard, reversals of judgments notwithstanding the verdict are common in Indiana. *See, e.g., Huff v. Travelers Indemnity Co.,* 266 Ind. 414, 363 N.E.2d 985 (1977); *Elsperman v. Plump; Johnson v. Bender,* 174 Ind.App. 638, 369 N.E.2d 936 (1977). "[T]he reviewing court neither weighs the evidence nor resolves questions of credibility of witnesses. This court views only the evidence most favorable to the verdict together with all favorable inferences flowing therefrom." *Long v. Johnson,* 177 Ind.App. 663, 669, 381 N.E.2d 93, 98 (1978).

Plaintiffs introduced substantial evidence that, if believed by the jury, established that defendant's blasting caused the damage to plaintiff's house. Since the evidence introduced by plaintiff is the only possible basis for the verdict, the jury must have determined that plaintiff's witnesses were credible. We must defer to the jury's finding of credibility. Plaintiff's witnesses testified that defendant's blasting caused (1) cracks in the walls and ceilings to form and expand, (2) seals between layers of thermopane glass to break, and (3) severe and repeated damage to the chimney. In addition, the witnesses testified that the detonations "really rocked" the house and "felt like an earthquake tremor, or an earthquake."

Defendant vehemently argues that, despite the evidence introduced by plaintiff, the trial judge should have granted judgment notwithstanding the verdict. Defendant asserts that the trial judge's failure so to do violates the "physical facts" rule, which holds that a jury verdict cannot stand if it is contrary to known scientific principles. *See, e.g., Zollman v. Symington Wayne Corp.,* 438 F.2d 28, 31–32 (7th Cir.1971), *cert. denied,* 404 U.S. 827, 92 S.Ct. 59, 30 L.Ed.2d 55. Defendant points out that plaintiff introduced no scientific evidence to demonstrate either that the blasts exerted a force on the house of greater than 0.17 inches per second particle velocity or that structural failure of materials could occur at forces of less than 0.50 inches per second particle velocity.

We are mindful of defendant's claim of frustration when it asserts that plaintiff introduced no scientific evidence to counter the testimony given on behalf of defendant. Nonetheless, based upon our own review of the record, we are unable to hold that plaintiff failed to introduce sufficient evidence to resist defendant's motion for judgment notwithstanding the verdict. That is, defendant did not introduce such overwhelming evidence to require the trial judge to have taken the case away from the jury. We note first that defendant's evidence was not unassailable. In particular, while defendant did introduce the results of calculations designed to determine the maximum forces that could have reached plaintiff's house, defendant did not demonstrate how its experts made those calculations. The evidence contained no equation with which a skeptical juror could redetermine for himself what forces the blasts produced, nor did defendant indicate what, if any, the margin of error was in its calculations. Furthermore, since defendant's witnesses were all either its employees or paid experts, the jury could have rejected their testimony upon credibility grounds.

Nonetheless, the defendant argues that the jury, for no rational reason, rejected the uncontradicted fact of the measured weakness of the seismic waves impacting upon the house, and "the applicable, established scientific fact, presented to the jury by expert testimony, that seismic waves of that magnitude cannot cause failure of the materials involved here." We do not mini-

mize the significance in the appropriate case of undisputed scientific evidence. A simple example, of course, would be where three bishops, based upon their observation, testified that the world is flat. We do not regard the present case, however, as an appropriate one for the application of the principle.

The expert testimony, of course, had significant probative value but it was not, in this case, as defendant contends, preclusively so. While speculation on the basis for any jury's decision is a somewhat futile exercise, and we decline to do so here, we do recognize that jurors are entitled to take into consideration in their deliberations common every-day knowledge. In this respect, we note the defendant's emphasis on causing the "failure of the materials here involved." Leaving aside the well known fact that a karate expert with a well placed blow of the hand can break a brick or a piece of stout wood, a house is not constructed of one piece of building material. It has many diverse components of varying weaknesses and strengths, all held together with fastening devices such as nails, also of varying degrees of fortitude. Vibrations in the overall house were specifically noted by witness observers in the house. This also was, in a sense, a physical fact which the jury was entitled to consider. That there was deterioration in the condition of the house following these vibrations was also established by testimony.

While the plaintiff testified that she had never noted any structural defects in the house prior to the onset of the blasting, even if we assume that the house was not well-built, which unfortunately now and then happens, there is no requirement that a house be a Gibraltar-type structure before persons causing damage to it may have to be answerable in damages, any more than the wrongdoer is protected by running his automobile into an invalid.

Plaintiff's testimony did contain "evidence of probative value to support" a finding of causation, and, under Indiana law, "[i]f there is relevant evidence to support a claim, but the evidence conflicts, the ver-

dict is not clearly erroneous, and judgment on the evidence notwithstanding the verdict is improper." *Elsperman v. Plump,* 446 N.E.2d at 1030. It is uniquely the function of the jury to sift through the evidence adduced at trial and assess the credibility of witnesses. The evidence in this case is in sharp conflict. Consequently, we must defer to the jury's resolution of that conflict and deny defendant's claim that the district court erred when it refused to grant defendant's motion for judgment notwithstanding the verdict.

Accordingly, the judgment of the district court is

AFFIRMED.