Susan J. ASHLOCK, Administratrix of the Estate of Anthony Joseph Ashlock, deceased, and individually, Plaintiff-Appellant,

v.

Robert F. NORRIS, Defendant-Appellee.

No. 4–184 A 2.

Court of Appeals of Indiana, Third District.

March 28, 1985.

Jay T. Seeger, Heide, Gambs & Mucker, Lafayette, for plaintiff-appellant.

John W. Barce, Barce, Vann & Ryan, Fowler, for defendant-appellee.

GARRARD, Judge.

This is a wrongful death case premised upon the gratuitous furnishing of alcoholic beverages to a person who subsequently struck and killed plaintiff's decedent with an automobile. The trial court granted summary judgment for the defendant.

The facts favorable to the plaintiff disclose that after work on April 13, 1982, Cindy Morrow went to Butterfield's Restaurant and Lounge in Lafayette. She arrived at the lounge about 3:45 p.m. and ordered a tequila mixed drink. About 5:00 p.m. appellee Norris arrived at the lounge. He was previously acquainted with Morrow and joined her at the bar.

At 7:30 p.m. Morrow had consumed two tequila mixed drinks as well as three shots of tequila purchased for her by Norris. At about that time Morrow fell down while attempting to pick up her purse which she dropped. After resting for several moments Morrow was able to regain her feet only with Norris' assistance. He then assisted her in leaving the lounge and helped her into her car. He then spent several minutes in an unsuccessful attempt to persuade Morrow not to drive. She, however, insisted that she had to leave, and she did.

About a mile from the lounge Morrow attempted to pass a car on the right. As she did she struck and killed Anthony Ashlock who was jogging along the shoulder of the road about ten feet from the travelled portion of the highway. Morrow continued to drive down the road, approximately two miles, until she drove into a ditch.

On June 21, 1982 Susan Ashlock, individually and as administratrix of the estate of Anthony Ashlock, deceased, commenced this action for wrongful death, naming as defendants the corporate owner of the lounge, two of its bartenders and Norris. On November 8, 1983 the actions against the lounge and the two bartenders were dismissed with prejudice upon plaintiff's motion. Summary judgment was then sought by Norris and granted.

Restated, the issues presented by this appeal are whether the law permits Ashlock to pursue a claim against Norris and, if so, whether there are genuine issues of fact that preclude summary judgment.

The focal point of the first question is whether Norris owed any duty to Ashlock which he may have breached by his conduct. Ashlock cites IC 7.1–5–10–15 as creating such a duty. This statute, which is a part of the criminal penalties provisions of our alcoholic beverages statutes, provides:

"It is unlawful for a person to sell, barter, deliver or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated."

Typically, the question of whether such a provision imposes a civil duty is the critical determination to be made. In Indiana that essential determination was made nearly

twenty years ago in *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847 when our Supreme Court determined that a companion section of the statute which prohibited a person from selling, bartering, exchanging, providing or furnishing an alcoholic beverage to a minor [1] had the public safety as one of its purposes and did create a civil duty, 217 N.E.2d at 851. That case involved a retail sale by a drugstore to a minor. Subsequently, in *Brattain v. Herron* (1974), 159 Ind.App. 663, 309 N.E.2d 150 the First District of this court extended liability to a private person furnishing alcoholic beverages to a minor.

In *Parrett v. Lebamoff* (1980), Ind.App., 408 N.E.2d 1344 we recognized that IC 7.1-5-10-15 imposed a civil duty upon a retailer of alcoholic beverages, as did Judge Ratliff writing for the First District in *Elsperman v. Plump* (1983), Ind.App., 446 N.E.2d 1027.

Most recently our Supreme Court, while affirming a verdict for the defendants in a claim brought under IC 7.1-5-10-15, cited *Parrett* and *Elsperman* stating, "Indiana law clearly endorses the proposition that a violation of the liquor laws will result in a civil action." *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 80.

It is true that all these decisions, except *Brattain*, have been litigated against either an establishment engaged in the business of selling alcoholic beverages or the bartender allegedly involved in the sale. On the other hand, as Judge Lowdermilk observed in *Brattain*, the legislature has

chosen to draw no distinction between one who sells in violation of the statute and one who gives or furnishes in violation. Indeed the legislature has specifically defined "person" to include any "natural person" (IC 7.1-1-3-31) and has made the statutory proscription applicable to a person, rather than to a "permittee." *See* IC 7.1-1-3-30.

In sum, the plain language of the statute prohibits a person from giving alcoholic beverages to an intoxicated person where the donor knows the other person is intoxicated.

■ Having so stated we nevertheless recognize a legitimate question may be posed as to whether the legislature intended to, and whether sound public policy supports, the extension of civil liability to family, friend or acquaintance who merely furnishes "one more drink" to an intoxicated person. Considering the carnage on our public highways involving intoxicated drivers, the answer to both questions may be "yes." [2] Certainly, the legislature has had ample time to respond to either *Elder* or *Brattain* if it desired to do so.

■ Accordingly, we conclude that Ashlock properly stated a claim for relief against Norris premised upon the alleged violation of IC 7.1-5-10-15.

The remaining question is whether there was a genuine issue of fact which would avoid summary judgment concerning Norris' knowledge of Morrow's intoxication *at the time* he last furnished her a drink. He urges there was not. In support, he points

1. Burns Ind.Stat.Anno. Section 12-438 [Repealed]. For present version, see IC 7.1-5-7-8. For the former version of IC 7.1-5-10-15 see Burns Ind.Stat.Anno. Section 12-615. Although the section has had several minor amendments, it is worthy of note that Acts of 1975, P.L. 74, Sec. 1, amended the section by adding a paragraph stating that the section should not impose civil liability upon "any educational institution of higher learning" unless the institution or its agent actually sold, etc. an alcoholic beverage to a minor.

2. In *Coulter v. Sup.Ct. of San Mateo Co.* (1978), 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669, 675 the court observed:
   "Doubtless, the spectre of civil liability may temper the spirit of conviviality at some social

occasions, especially when reasonably observant hosts decline to serve further alcoholic beverages to those guests who are obviously intoxicated and perhaps becoming hostile. Nonetheless, in this context, we must surely balance any resulting moderation of hospitality with the serious hazard to the lives, limbs, and property of the public at large, and the great potential for human suffering which attends the presence on the highways of intoxicated drivers. In doing so we need not ignore the appalling, perhaps incalculable, cost of torn and broken lives incident to alcohol abuse, in the area of automobile accidents alone."

to his deposition, answers to interrogatories and affidavit filed in support of his motion for summary judgment. In sum these materials assert that Norris last furnished Morrow a drink about 7:00 p.m., that she did not appear to him to be intoxicated at that time, and that it was not until thirty to forty minutes later that her intoxication became apparent.

As Judge Staton explained in *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143 summary judgment procedure should be applied with considerable caution so that a party's right to the fair determination of a genuine issue is not jeopardized. Thus, any doubt as to a fact, or an inference to be drawn therefrom is to be resolved in favor of the party opposing the motion for summary judgment.

On the other hand, in a number of cases we have recognized that once a party has moved for summary judgment with supporting materials as required by the rule, the opposing party may not merely rest on his pleadings. Instead he must be filing his own materials, or otherwise, demonstrate that a genuine issue does exist. *See, e.g., Durakool, Inc. v. Mercury Displacements Indus., Inc.* (1981), Ind.App., 422 N.E.2d 680. Of course, it is enough if from the record taken as a whole it appears that a genuine issue remains. *See Dallas Co. v. Tobias Studio, Inc.* (1974), 162 Ind. App. 213, 318 N.E.2d 568.

It would be proper to prove by circumstantial evidence that Norris knew Morrow was intoxicated before he last provided her a drink. As the court pointed out in *Elsperman, supra,* there are many factors which can be considered in determining whether a person was intoxicated to another person's knowledge, including what and how much the person was known to have consumed, the time involved, the

person's behavior at the time, and the person's condition shortly after leaving. 446 N.E.2d at 1031.

In the case before us the question is extremely close. Norris' knowledge of Morrow's condition is not capable of simple emphatic proof as would be the execution of a written instrument or the placement of a stop sign. It is a very fact sensitive determination.

The record bearing upon the propriety of the summary judgment consists of Norris' answers to interrogatories, affidavit and deposition.[3] As previously indicated they disclose that when Norris arrived at the lounge about 5:00 p.m. Morrow was sitting at the bar with a half-consumed tequila sunrise before her. Between then and 7:00 p.m. when Norris last purchased her a drink she finished that drink, had another of the same, and had the three straight shots of tequila purchased for her by Norris. According to Norris during this time she did not appear at all intoxicated. Her speech was ordinary. About 6:00 p.m. she went to the restroom and did not stagger or appear unstable. Then about 7:30 p.m.[4] she attempted to go to the waitress station to converse with someone. On the way she dropped her purse, spilling its contents. When she attempted to pick it up she "just kind of sat down backwards like she lost her balance" and could not rise without assistance. Norris said at that point she "seemed to be quite out of control [and] appeared to be possibly going to get ill." Norris then helped her outside to her car where he attempted to dissuade her from driving. She then left and minutes later struck and killed Mr. Ashlock.

There was some evidence from which an inference might be drawn opposing Norris' declaration that Morrow did not appear intoxicated. Norris was in her presence for

---

3. A reference in the record indicates that a number of other depositions had been taken in the case. It does not appear, however, that they were published and none are included in the transcript. Accordingly, it appears that they were not before the trial court and are not germane to the appeal. *See Augustine v. First*

*Federal S. & L.A.* (1979), 270 Ind. 238, 384 N.E.2d 1018.

4. Norris' deposition fixes these times. His affidavit filed in support of summary judgment places the last drink purchase at 7:30 p.m. and the incident with the purse about 8:00 p.m.

a period of two and a half to three hours. During this time she consumed five drinks, each of which contained one ounce of tequila. However, nothing was placed before the court on the motion for summary judgment to establish the probable effect of that much alcoholic beverage in that time span upon either Morrow or an average person of her physical makeup. Nevertheless, within about one half hour after receiving the fifth drink she was so intoxicated that she could not maintain her balance or walk without assistance, and appeared to be "out of control." Norris, of course, was not a disinterested bystander, and there was a conflict in his testimony between the affidavit and the deposition as to the times Morrow had her last drink and when she became apparently drunk.

We are inclined to agree with the trial court's assessment which we interpret to mean that the foregoing evidence *standing alone* would be insufficient to avoid judgment on the evidence in favor of Norris, if presented to a jury. Only speculation based upon the circumstances supports the determination that Norris was aware Morrow was intoxicated when he last provided her a drink.

Should we, then, sustain the summary judgment because the nonmovant has failed to show there is a genuine factual dispute concerning Norris' lack of knowledge of Morrow's intoxicated condition when he last provided her a drink? The question is extremely close, but the underlying purposes of Trial Rule 56 persuade us that the summary judgment should not stand.

■ Because summary judgment deprives the non-moving party of the right to a trial, the burden is upon the movant to establish that no genuine issue of fact exists. *McKenna v. City of Ft. Wayne* (1981), Ind.App., 429 N.E.2d 662. A fact issue is genuine if it cannot be completely resolved by reference to undisputed facts. *American Family Mut. Ins. Co. v. Kivela* (1980), Ind.App., 408 N.E.2d 805. Thus, summary judgment is inappropriate where the information before the court reveals a good faith dispute as to the inferences to be drawn from the evidence. *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.* (1984), Ind.App., 458 N.E.2d 291. If after considering the factual materials any doubt remains as to the existence of a genuine issue of material fact, summary judgment is inappropriate. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630. Summary judgment should not be used as an abbreviated trial wherein conflicting inferences are resolved and evidence is weighed. *Id.*

■ Here a doubt remains; a doubt that may be fairly resolved when the testimony of all the witnesses is heard and credibility determinations can be properly made. Therefore the summary judgment must be reversed.

■ Finally, Ashlock argues that independently of any liability premised upon furnishing alcoholic beverages to Morrow, a negligence claim exists against Norris for his actions in helping Morrow to her automobile and then permitting her to drive.

This contention is resolved by determining whether under the circumstances Norris owed a duty to the public including Ashlock's decedent. We believe Judge Neal's opinion in *Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534 carefully considers those situations in which such a duty might be imposed, and concludes that absent some special relation, not here present, between Norris and Morrow or the right of Norris to control the use of the automobile, no duty to the public exists. *See also Fugate v. Galvin* (1980), 84 Ill. App.3d 573, 406 N.E.2d 19.

The summary judgment is reversed and the case is remanded for further proceedings consistent herewith.

Reversed.

STATON, P.J., and HOFFMAN, J., concur.