**Jane M. CAMPBELL, Appellant,**

v.

**The BOARD of TRUSTEES of WABASH COLLEGE, Sigma Chi Fraternity and Delta Chi Chapter of Sigma Chi Fraternity, Appellees.**

**No. 06A01–8601–CV–1.**

Court of Appeals of Indiana,
First District.

July 16, 1986.

John F. Townsend, Jr., Townsend, Hovde & Montross, Indianapolis, for appellant.

Stephen W. Terry, Jr., Alan L. McLaughlin, Baker & Daniels, Indianapolis, Peter L. Obremskey, Parr, Richey, Obremskey & Morton, Lebanon, for The Bd. of Trustees of Wabash College.

James R. Earnshaw, Harding, Henthorn & Harris, Crawfordsville, for Delta Chi Chapter of Sigma Chi Fraternity.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Jane M. Campbell (Campbell), appeals an adverse judgment rendered by the Boone Superior Court in a summary judgment proceeding.

We affirm.

### STATEMENT OF THE FACTS

The undisputed facts are as follows. Bruce Heslin (Heslin) was a student at Wabash College (College) in Crawfordsville, Indiana. He was also a member of Sigma Chi Fraternity, Inc. and its local chapter, the Delta Chi Chapter (Fraternity), a social fraternity located off-campus and situated in a building owned by the College but leased by the Fraternity. During the evening hours of November 17, 1982, and the early morning hours of November 18, 1982, Heslin was entertaining Campbell, a student from St. Mary of the Woods College, an all women college located in Terre Haute, Indiana. The bulk of the time that Heslin and Campbell were together that evening and morning was apparently spent in Heslin's own room at the Fraternity. While together, Heslin and Campbell consumed alcoholic beverages which Heslin himself purchased and provided. Neither

Heslin nor Campbell attended a College or Fraternity sponsored event during the time period involved.

Sometime during the early morning hours of November 18, 1982, Heslin attempted to return Campbell to St. Mary of the Woods College. That attempt ended abruptly at approximately 5:00 a.m. when Heslin's automobile left State Road 475 and careened into a ditch. Campbell suffered serious injuries. Shortly after the accident occurred, it was determined that Heslin's blood alcohol level exceeded the legal limit, and he was arrested. Heslin was 21 years of age at the time of the accident.

Campbell filed this action against the Board of Trustees of Wabash College, the Sigma Chi Fraternity, Inc., and the Delta Chi Chapter of Sigma Chi Fraternity alleging that all three were negligent in that they permitted Heslin to consume an alcoholic beverage on the premises of the College and Fraternity knowing that Heslin would operate a motor vehicle after consuming the beverage.

## ISSUE

Campbell contends that summary judgment was inappropriate since, as a matter of law, all three defendants had a duty to control Heslin's consumption of alcoholic beverage; a beverage which Heslin personally bought and consumed in the privacy of his own fraternity room.

## DISCUSSION AND DECISION

This case comes to us at a time when the concerns of drinking and driving are paramount in the minds of a significant portion of our society. One of these concerns regards the liability of third parties for the acts of drunken drivers. Whether the third party is the commercial provider of alcoholic beverages who is experiencing enormous increases in the cost of liability insurance (if he can obtain it at all), or the host of a private party who wonders whether he can serve alcoholic beverages to friends and neighbors without subjecting himself to a multi-million dollar lawsuit against which he has little or no protection, the ramifications of third party liability are broad and sweeping. For that reason, we take this opportunity to review the law in Indiana regarding the theories under which third parties may be held liable for the negligent acts of drunk drivers.[1]

*Providers of Alcoholic Beverages as Third Parties.*

Traditionally, the common law did not place third party liability on providers of alcoholic beverages, whether they were commercial providers or social hosts. *See Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847, quoting 30 AM.JUR. *Intoxicating Liquors,* Sec. 520 (1958). So long as the person receiving the alcohol was a "strong and able-bodied man" the provider was not liable for any alcohol related negligent acts of the drinker. *Id; see also Cruse v. Aden* (1889), 127 Ill. 231, 20 N.E. 73. This perspective was founded on the principle of proximate cause; the serving of alcohol being too remote from the subsequent negligent act of the drinker, i.e. the proximate cause of the negligence was the drinking of the alcohol, not the serving of it. *See State ex rel. Joyce v. Hatfield* (1951), 197 Md. 249, 78 A.2d 754.

As early as 1853, Indiana had enacted a statute placing civil liability for the cost of boarding plus a fifty percent penalty on persons who caused others to become intoxicated and then refused to care for them until they were sober enough to return home unassisted. 1853 Ind.Acts Ch. 66, Sec. 7. *See Struble v. Nodwift* (1858), 11 Ind. 64. By 1882, the then existing liquor law specifically provided for a civil cause of action to recover damages resulting from a violation of the statute. *See* Ind.Rev.Stat. Ch. 80, Sec. 5323 (1881); *see Dunlop v. Wagner* (1882), 85 Ind. 529. However, that chapter of the statute did not prohibit the

---

1. For an excellent general discussion of third party liability for the acts of drunk drivers, *see* Comment, *Third Party Liability for Drunken Driving: When "One for the Road" Becomes One for the Courts,* 29 VILL.L.REV. 1119 (1984).

sale of alcoholic beverages to those already intoxicated. In the years to follow, numerous amendments were made to the statutes regulating the sale and use of alcoholic beverages, and by 1966, no reference regarding a civil cause of action arising from a violation of the state liquor laws still existed in the Indiana statutes. *See Elder, supra.* Despite that fact, our supreme court held in 1966 that a retail provider of alcoholic beverages who, in violation of statute, sold alcoholic beverages to a minor could be held civilly liable for injuries suffered by another as a result of an automobile accident occasioned by the minor after he had become intoxicated from the beverage illegally sold to him.[2] *Elder, supra.* That decision was based on the proposition that if a statute is enacted for a purpose not "wholly different" than to prevent the injury of which the victim complains, and if the statute was designed to protect a class of persons to which the plaintiff belongs, the "duty owed" element of actionable negligence is established. *Id.* at 603, 217 N.E.2d at 850.

In 1980, the Third District of this court, speaking through Judge Garrard, found the reasoning upon which *Elder* was based applicable to an action brought under IND. CODE 7.1–5–10–15, which prohibits the sale, barter, delivery, or gift of intoxicating beverages to persons already intoxicated. *Parret v. Lebamoff* (1980), Ind.App., 408 N.E.2d 1344. *Parret* involved a situation where the administratrix of a decedent's estate brought an action against the operators of a bar. She claimed that the defendants, in violation of IND. CODE 7.1–5–10–15, had served the decedent alcoholic beverages after the decedent had already become intoxicated, and that upon leaving the bar the decedent caused an automobile accident and died as a result thereof. The Third District held that the estate could maintain a civil cause of action against the operators of the bar for having violated the statute.

In 1985, the Third District, again speaking through Judge Garrard, held that a cause of action against a person who, in violation of IND. CODE 7.1–5–10–15, gratuitously served alcoholic beverages to an already intoxicated person is available to persons subsequently injured by alcohol induced negligent acts of the intoxicated person. *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, *trans. denied.* In *Ashlock*, a woman entered a bar at approximately 3:45 p.m. and ordered a mixed drink. There was no evidence that she had drunk any intoxicating beverages that day before entering the bar. At approximately 5:00 p.m., the woman was accompanied by a male companion, the defendant. By 7:30 p.m., the woman had consumed one more mixed drink and three shots of tequila. The shots were provided by the defendant. At about that time, the woman dropped her purse, and, in an attempt to retrieve it, fell to the floor. She required assistance to stand and was assisted to her car by the defendant. The defendant then spent several minutes attempting to dissuade the woman from driving. She rebuffed his efforts and insisted that she had to leave. Shortly after driving away from the bar, the woman drove onto the shoulder of the road, striking and killing a jogger. In concluding that a cause of action against the male acquaintance existed in favor of the decedent's estate, the court stated that by enacting IND. CODE 7.1–5–10–15 the legislature intended to hold friends and relatives who merely provide an already intoxicated person with "one for the road" liable for injuries caused by the intoxicated person as a result of his inebriated state. Under *Ashlock*, liability would attach regardless of persistent efforts made to persuade the drunk not to drive, and regardless of how intoxicated the person was before the single drink was provided by a friend or relative.

The result in *Ashlock* is troublesome and raises serious legal and practical problems. For example, how can it be determined whether the drink which initially intoxicat-

---

2. We note that the instant case does *not* involve third party liability resulting from the negligent acts of a minor who had consumed alcoholic beverages.

ed the person or the drink which was provided after the point of intoxication was the drink which in fact caused the negligent act, and how can one, after mistakenly and negligently providing a drink to an intoxicated person, protect oneself from liability under the statute without exposing oneself to civil and criminal liability for assault and false imprisonment or criminal confinement. Though tempted, we will not address those problems in the instant case since to do so would be an exercise in dicta.

*Non-Providers of Alcoholic Beverages as Third Parties.*

Non-providers of alcoholic beverages may also be subject to third party liability for the acts of drunk drivers. Cases within and without our jurisdiction have found non-providers liable based on at least one of three separate legal theories: respondeat superior; negligent entrustment; and duty to control the conduct of others. *See* Comment, *Third Party Liability for Drunken Driving: When "One for the Road" Becomes One for the Courts,* 29 VILL.L.REV. 1119 (1984).

The doctrine of respondeat superior basically states that because a special relationship exists between the negligent party and a third party, the third party is liable for the tortfeasor's negligence even though the third party may have been free from negligence altogether. *See* PROSSER AND KEETON ON THE LAW OF TORTS Sec. 69 (W. Keeton 5th ed. 1984). The common law recognizes four different types of relationships as sufficiently close so as to invoke the doctrine. They are: (1) employer/employee; (2) principal/agent; (3) joint enterprise; and (4) family purpose (the "family purpose" relationship is not recognized in Indiana. *Pierce v. Horvath* (1968), 142 Ind. App. 278, 233 N.E.2d 811, *trans. denied.*) *See* PROSSER AND KEETON, *supra,* Sec. 70, 72, 73.

Though there are examples where third parties may be held liable under the respondeat superior doctrine for the alcohol induced negligent acts of others, as indicated by decisions in other jurisdictions, *see Chastain v. Litton Systems, Inc.* (4th Cir.

1982), 694 F.2d 957, *cert. denied* (1983), 462 U.S. 1106, 103 S.Ct. 2454, 77 L.Ed.2d 1334; *Harris v. Trojan Fireworks Co.* (1981), 120 Cal.App.3d 157, 174 Cal.Rptr. 452, we have found no Indiana cases which have in fact held a third party liable for such under the doctrine. *But cf. dissenting opinion* in *City of Crawfordsville v. Michael* (1986), Ind., 487 N.E.2d 159.

The theory of negligent entrustment of an automobile is an exception to the common law general rule that one who owns an automobile and lends it to another does not become liable for the lendee's negligent acts while the latter is operating the vehicle. 7A AM.JUR.2D *Automobiles and Highway Traffic* Sec. 641 (1980). Indiana recognizes the exception which holds that if an owner/possessor entrusts an automobile either to one who is intoxicated, or to one whom the owner/possessor knows or should know will become intoxicated and then drive the vehicle, the owner/possessor is liable for injuries caused by the intoxicated driver. *Alspach v. McLaughlin* (1969), 144 Ind.App. 592, 247 N.E.2d 840, *trans. denied; see North Side Chevrolet, Inc. v. Clark* (1940), 107 Ind.App. 592, 25 N.E.2d 1011; *see also* 7A AM.JUR.2D, *supra,* Sec. 643 (1980).

When addressing the duty to control the conduct of others, the courts of Indiana generally follow the principles set forth in the Restatement (Second) of the Law on Torts. *See, e.g., Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534. The basic principle of this duty is stated as follows:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

RESTATEMENT OF THE LAW ON TORTS Sec. 315 (2d ed. 1965).

The specific duties which make up the basic principle are:

(1) The duty of a parent to control the conduct of his child (*Id.*, Sec. 316);

(2) The duty of a "master" to control the conduct of his "servants" (*Id.*, Sec. 317);

(3) The duty of a possessor of land or chattels to control the conduct of his licensee (*Id.*, Sec. 318);

(4) The duty of those in charge of persons having dangerous propensities to control such persons (*Id.*, Sec. 319); and

(5) The duty of those having custody of another to control the conduct of others (*Id.*, Sec. 320).

Campbell's theory of third party liability, i.e. that the College and Fraternity are liable for their failure to control Heslin's drinking activity, does not fit neatly into any of the theories discussed above. Rather, Campbell has looked to *Ashlock, supra,* and *Bearman v. University of Notre Dame* (1983), Ind.App., 453 N.E.2d 1196, *trans. denied,* (holding the University liable for injuries suffered when a drunken football game spectator fell on another spectator),[3] has determined that Indiana has adopted a policy placing civil liability upon those who are able to foresee drunk driving by those under their supervision but who fail to act to curtail the drinking activity, and then has applied that policy to the College and its students, and to the Fraternity and its members. Even if we were to entertain such a broad expansion of the duty to control the conduct of others, the facts of the instant case are not at all favorable to the result urged by Campbell.

■ College students and fraternity members are not children.[4] Save for very few legal exceptions, they are adult citizens, ready, able, and willing to be responsible for their own actions. Colleges and fraternities are not expected to assume a role anything akin to *in loco parentis* or a general insurer. Although there may be situations where a college or university will be required to control a drunk driver in order to avert liability for injuries sustained by another, the instant case is not such a situation. No evidence suggests that either the College or the Fraternity provided Heslin with alcoholic beverages, that the College or Fraternity knew that Heslin ever drank alcoholic beverages or that he would be drinking on that particular night, or that the College or Fraternity knew that Heslin would drive an automobile after becoming intoxicated.

■ Campbell, in effect, asserts that since the College and Fraternity knew that some student fraternity members would on occasion drink and drive, each had a duty to adopt a policy condemning and discouraging such activity, and that a breach of that duty subjects the College and Fraternity to liability for injuries sustained by others as a result of a student fraternity member's drunk driving. None of the above discussed and recognized duties or theories of third party liability comes close to supporting this assertion. Campbell cites no authority in point, and we know of none. The cases cited by Campbell are distinguishable on their facts. *See Whitlock v. University of Denver* (1985), Colo. App., 712 P.2d 1072 (case not involving the use of alcohol but rather a known danger, i.e. a trampoline, at a particular fraternity house); *Peterson v. San Francisco Community College District* (1984), 36 Cal.3d 799, 205 Cal.Rptr. 842, 685 P.2d 1193 (case not involving the use of alcohol but rather a sexual attack in an area of campus where other very similar but unpublicized attacks had taken place); *Mullins v. Pine Manor College* (1983), 389 Mass. 47, 449 N.E.2d 331 (case not involving the use of alcohol

---

**3.** *Bearman* was decided on the basis that an operator of a place of public entertainment owes a duty to keep the premises safe for its invitees.

**4.** For an excellent commentary on the changed role of college administration vis-a-vis college students, see the comments of the Honorable Judge Aldisert in *Bradshaw v. Rawlings* (3rd Cir.1979), 612 F.2d 135.

but rather a sexual attack in an area for which the college had assumed security responsibilities); and *Zavala v. Regents of University of California* (1981), 125 Cal. App.3d 646, 178 Cal.Rptr. 185 (case involving injuries to student incurred after becoming intoxicated at *university sponsored* event at which alcoholic beverages were served). In her attempt to reach the proverbial "deep pocket", Campbell asks us to extend the duty to control the conduct of others to an absurd extent. We decline the invitation.

The facts being uncontested, the College and Fraternity were entitled to judgment as a matter of law.

Summary judgment affirmed.

RATLIFF, J. concurs with opinion.

YOUNG, P.J. (sitting by designation) concurs.

RATLIFF, Judge, concurring.

I cannot concur in the language in the majority opinion which criticizes the holding of this court in *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, *trans. denied.* I agree, however, that *Ashlock*, a case which I believe was decided properly, does not sustain Campbell's position.

I would also point out that this district has upheld imposing liability upon one who serves alcoholic beverages to an intoxicated person who subsequently inflicts injury upon a third person as a result of his drunken operation of a motor vehicle. *Elsperman v. Plump* (1983), Ind.App., 446 N.E.2d 1027. However, *Elsperman*, clearly is distinguishable from this case and lends no support to imposing liability upon either the college or the fraternity.

Except for the majority's unwarranted criticism of *Ashlock*, I concur.