Eric **SWANSON**, Plaintiff-Appellant,

v.

**WABASH COLLEGE,**
Defendant-Appellee.

No. 67A01–8606–CV–150.

Court of Appeals of Indiana,
First District.

Feb. 26, 1987.

Thomas H. Singer, South Bend, for plaintiff-appellant.

Larry R. Fisher, Thomas J. Herr, Stuart & Branigin, Lafayette, for defendant-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Eric Swanson appeals the trial court's grant of summary judgment in the favor of Wabash College. We affirm.

## FACTS

In August of 1982, Eric Swanson began his freshman year at Wabash College in Crawfordsville, Indiana. On September 29, 1982, Eric read an announcement in a daily college circular inviting anyone interested in playing baseball during the fall to attend an upcoming meeting. Eric had played baseball for many years and was interested in playing at Wabash, so he decided to attend the meeting.

The announcement was placed by Dan Taylor, an experienced varsity player for the Wabash baseball team. After Taylor conceived the idea, he and four others decided to organize fall baseball practice sessions. There had never been any type of fall baseball program at Wabash. Taylor and another experienced player discussed Taylor's idea with Mike Deal, the baseball coach. Deal had no objections but informed the boys he was unable to participate as he was busy coaching the fall football program and that, as far as he or the athletic department were concerned, the boys were "on their own." Record at 273. Deal also gave them approval to use some of the baseball team's equipment. Taylor then approached the Dean of Men with his idea and secured money from him to purchase baseballs for the practices.

Taylor basically took charge of the meeting, announcing he wanted to organize baseball workouts for anyone interested in participating. Taylor expressed his hope

that these practices might lead to an improved spring program. Taylor said that he would be taking charge of the practices and outlined his plan for these sessions, including the possibility of a few games with neighboring colleges. In addition, Taylor said that he planned to inform Coach Deal of any prospective players who were playing well. Practice began in early September in a city-owned park as the Wabash field was being used for football.

At the September 27, 1982, session, Taylor was conducting outfield practice. Taylor hit a ball to right field. Eric, playing shortstop, positioned himself between the right fielder and third baseman to act as a cut-off man. The outfielder threw the ball toward third base. Seeing that it was a good throw, the third baseman told Eric to let it go. During this play, Eric stood with his back to Taylor (the batter) with his head over his right shoulder to right field from where the ball was coming. As the third baseman called for the ball, Eric pivoted counter-clockwise toward third base so that he would be facing Taylor for the drive to left field. However, Taylor had already started the play so that, as he turned, Eric was struck in the eye by the ball.

Eric then brought this action against Wabash for the eye injury he sustained. On January 3, 1986, Wabash filed a motion for summary judgment arguing that the school had no duty to provide supervision during these "practices", that Dan Taylor was not an agent of Wabash, and that Eric had incurred the risk of his injuries. The court granted this motion and, thereafter, Eric perfected this appeal.

## ISSUES

Eric presents the following issues for review:

Whether the trial court erred in granting Wabash's motion for summary judgment on the grounds that:

1. The College had no duty to supervise the baseball practices.

2. Dan Taylor was not an agent of Wabash College.

3. Eric incurred the risk of his injury.

## DISCUSSION AND DECISION

At the outset we note that the standard for review, on appeal, applicable to summary judgment is the same one used in the trial court. A motion for summary judgment may be sustained where the pleadings and other matters filed with the court reveal no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C); *First Savings and Loan Association v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, 1151, *trans. denied; Kidd v. Davis* (1985), Ind. App., 485 N.E.2d 156, 158; *Wingenroth v. American States Insurance* (1983), Ind. App., 455 N.E.2d 968, 969; *First Federal Savings and Loan Association of Gary v. Arena* (1980), Ind.App., 406 N.E.2d 1279, 1282. In determining whether a genuine issue of material fact exists, the facts set forth by the opponent must be taken as true, and all doubts are resolved against the proponent of the motion. *First Federal*, at 1282. With this standard in mind, we turn to the issues raised by Eric.

*Issue One*

Eric argues the trial court erred in granting Wabash's motion for summary judgment on the grounds that Wabash had no duty to supervise the baseball practices. Essentially, Eric asserts that these sessions amounted to a fall baseball program sanctioned by the college. Thus, Eric contends that Wabash had a duty to supervise the baseball practices and to exercise reasonable care and supervision for the safety of students under its care.

■ In Indiana, the tort of negligence is comprised of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of the defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E.2d 701, 706; *Ingram v. Hook's Drugs, Inc.* (1985), Ind.App., 476 N.E.2d 881, 883, *trans. denied.* There are three questions

of law to be decided by a trial court concerning these elements before it may submit a case to the jury. *Miller*, at 611, 308 N.E.2d at 706.

The first question is whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff.

"The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty."

*Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 169, 111 N.E.2d 280, 285. The second question of law concerns what standard of care the courts will impose on this relationship once a duty is recognized. *Miller*, at 611, 308 N.E.2d at 706. The traditional standard to be applied is whether the defendants exercised their duty with the level of care that an ordinary, prudent person would under the circumstances. Finally, the trial court must decide whether the evidence the plaintiff introduces at trial is sufficient, as a matter of law, to enable the jury to find that the plaintiff has established the elements of the cause of action. *Id.* at 612, 308 N.E.2d 707.

[2] As Eric correctly points out, our supreme court has imposed a duty upon school authorities to exercise reasonable care and supervision for the safety of children under their tutelage. *Id.*, at 612, 308 N.E.2d at 706; *Beckett v. Clinton Prairie School Corp.* (1986), Ind.App., 494 N.E.2d 988, 989–90 (transfer pending); *Dibortolo v. Metropolitan School Dist. of Washington Township* (1982), Ind.App., 440 N.E.2d 506, 509. However, schools are not intended to be insurers of the safety of their pupils, neither are they strictly liable to them for any injuries they may incur. *Miller*, at 612, 308 N.E.2d at 706. To support his argument that Wabash owed him a duty to supervise the baseball practices, Eric cites several cases, from Indiana and other states, imposing such a duty on schools. However, these cases generally involve a school's duty to supervise young

school children in the classroom, at recess, or in some other school-organized activity. Eric, on the other hand, was a college freshman at Wabash participating in recreational baseball practices.

■ As we noted in *Campbell v. Board of Trustees of Wabash College* (1986), Ind. App., 495 N.E.2d 227, 232, college students are not children. "Save for very few legal exceptions, they are adult citizens, ready, able, and willing to be responsible for their own actions. Colleges ... are not expected to assume a role anything akin to *in loco parentis* or a general insurer." *Id.* Nor did Wabash have a duty to control the conduct of Taylor under the present circumstances. Indiana courts, when addressing the duty to control the conduct of others, generally follow the Restatement (Second) of the Law of Torts. *Campbell*, at 231. The basic principle of this duty is stated as follows:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

Restatement of the Law on Torts Section 315 (2d ed. 1965).

"The specific duties which make up the basic principle are:

(1) The duty of a parent to control the conduct of his child (*Id.*, § 316);

(2) The duty of a 'master' to control the conduct of his 'servants' (*Id.*, § 317);

(3) The duty of a possessor of land or chattels to control the conduct of his licensee (*Id.*, § 318);

(4) The duty of those in charge of persons having dangerous propensities to control such persons (*Id.*, § 319); and

(5) The duty of those having custody of another to control the conduct of others (*Id.*, § 320)."

Clearly, the circumstances of the present case do not fall under any of the above theories.

Eric cites *Beckett v. Clinton Prairie School Corp.* (1986), Ind.App., 494 N.E.2d 988 (transfer pending), to support his contention that Wabash had a duty to exercise reasonable care and supervision of the baseball practices. In *Beckett*, a high school baseball player sued the school for injuries he sustained from collision with another player during formal, organized team practice.

"The accident occurred after Coach Hilgedick hit a high fly ball to Beckett. The wind was blowing hard and it was difficult for the players to hear. Beckett called for the ball. Meanwhile, Coach Hilgedick called for the cut off man (Wein) to catch the ball. Beckett said he did not hear Wein call for the ball. Wein said he was only to catch the ball upon receiving instructions from the coach. Neither the coach nor Wein heard Beckett call for the ball. Wein and Beckett collided head-on.

"During the first week of practice each season, the baseball players received a packet of instructions from the baseball coaches. This packet included rules for outfielders. Among the communication rules for outfielders were: 'once you call for a ball, it's yours' and 'outfielders have preference over infielders.' Both players were aware of these rules and both players were aware a collision could occur on a baseball field or in practice."

*Id.* at 989. The trial court granted summary judgment in the school's favor. On appeal, the Fourth District noted that Beckett, seventy yards away from the coach, responded to the fly ball in compliance with the written instructions. Furthermore, the coach, aware of his written instructions and the wind conditions, instructed the cut off man to catch the ball. Reversing and remanding, the Fourth District found that under the circumstances it could not be said the coach's actions conformed to the requisite standard of care as a matter of law, and thus the case presented questions unsuitable for summary judgment. *Id.* at 990.

■ However, the circumstances in the present case are distinguishable from those that imposed a potential duty of supervision on the coach in *Beckett*. *Beckett* involved a formal, organized practice of the high school team during its baseball season, whereas here we have a group of Wabash students getting together for some recreational baseball, some of them team members, others not. *Beckett* involved the duty of a high school coach who, aware of conditions during practice and his own written rules, contravened his written instructions with the knowledge that his students were relying on his expertise. Conversely, the Wabash College students playing .recreational baseball were well aware that there would be no professional coaching assistance or supervision, or any written guidelines for play. Instead of an organized, school sponsored athletic event involving children, like that found in *Beckett*, this case involves a group of college students who get together to practice baseball for various reasons in the city park. While Taylor did notify the school of his intentions and secured money for baseballs from the Dean of Men this does not raise these baseball practices to the level of a college sponsored event or even bring them into question. While the injury to Eric is regrettable, he has failed to demonstrate that Wabash had any duty to supervise these recreational baseball practices. Absent any duty to Eric, the college cannot be held liable for negligence for the accident.

*Issue Two*

■ Eric further argues that Wabash is liable for his injuries because Taylor was an agent of the college or, at the very least had an implied or apparent authority. Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former. *Hope Lutheran Church v. Chellew* (1984), Ind.App., 460 N.E.2d 1244, 1247, *trans. denied.* In addition, the agent must acquiesce to the arrangement and be subject to the principal's control. *Id.* An apparent agency is also initiated by a manifestation of the principal. *Id.*, at 1248.

However, the necessary manifestation is one made by the principal to a third party who in turn is instilled with a reasonable belief that another individual is an agent of the principal. *Id.* It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. *Id.* Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship. *Id.*

■ Here, Taylor was not an agent of Wabash. There is no evidence presented which would demonstrate the necessary elements of manifestation of a relationship, consent, and control. On the contrary, here there is no manifestation by Wabash that Taylor was acting as their agent. Instead, Taylor approached Deal and the school with his idea and was told he was on his own. Taylor never acquiesced in any type of control over him by Wabash. Nor do the facts demonstrate an implied or apparent agency. Wabash never made any sort of communication to Eric that Taylor was acting as an agent of the school. Additionally, any statements made by Taylor which might indicate otherwise, and we can find none that do, would be insufficient to create an apparent agency relationship.

■ Moreover, there is no legal or factual basis for liability on Wabash's part under an agency or employment theory. "The general rule of liability that presupposes *authorization* of the acts of the agent in order to bind the principal applies to a principal's contractual or *non-tort* liability. *See, e.g.,* 3 Am.Jur.2d *Agency* § 261, p. 627. The *tort* liability of the principal expressed in the doctrine of respondeat superior is based not upon the agency relationship (authorization or ratification) but upon the employer-employee relationship. Thus, the touchstone for the principal's liability for the tortious acts of his agent is merely whether they are done within the course and scope of the employment." *Estate of Mathes v. Ireland* (1981), Ind. App., 419 N.E.2d 782, 786. Generally, the

doctrine of respondeat superior imposes liability upon a master for the torts of his servants committed while acting within the scope of the servant's employment. *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099, 1102, *trans. denied.* The test for determining a master servant relationship is whether one has the right to direct and control the conduct of the alleged servant at the time of the incident. *Id.,* at 1103. The primary consideration in an employment setting is whether there was an intent that a contract of employment, express or implied, did exist. In other words, there must be a mutual belief that an employer-employee relationship did exist. *Rensing v. Indiana State University Bd. of Trustees* (1983), Ind.App., 444 N.E.2d 1170, 1173. There is no evidence to indicate Taylor was an employee of Wabash or that either party believed him to be the same. Taylor was merely a senior student who took it upon himself to organize a fall baseball practice for any interested fellow students. Wabash had no right to control the conduct of Taylor while he conducted outfield practice in a city-owned park. Taylor was not an employee, servant or agent of Wabash and, therefore, the school is not liable for Taylor's actions under respondeat superior or an agency theory. In addition, the absence of a legal relationship between Wabash and Taylor further supports our holding in the first issue that Wabash had no duty, in the present case, to supervise the baseball practices or to assume liability for Taylor's actions. Therefore, the trial court did not err in granting Wabash's motion for summary judgment. Given our holding on these two issues there is no need to address the remaining issue raised by Eric.

Judgment affirmed.

ROBERTSON, J., concurs.

NEAL, J., concurs with separate opinion.

NEAL, Judge, dissenting.

I concur in the opinion and the reasons stated therein. I wish here to note a more

fundamental reason to affirm the result. All sports involve running, collision, tumbling, and a general throwing about of bodies. Some sports involve the use of equipment such as hard balls, bats, sticks, pucks, and the like, which are capable of inflicting injuries. Injuries in sports are not only predictable, but are a certainty. Any person who has participated in varsity sports for any length of time at all can attest to one or more injuries he has received with varying degrees of severity. All baseball players have been hit by balls or bats, injured while sliding or colliding on the base path, at a base, or with other fielders while fielding the ball. We are even treated to the amusing spectacle of professionals in the major leagues in a world series colliding with each other while attempting to catch a fly ball, while the ball falls untouched for a hit among them. By the very nature of play, no coach or manager can possibly prevent such occurrences. All persons who play ball know this and assume the risks.

To hold a school responsible in tort, for injuries incurred in the normal course of play, borders on the absurd. I would place the grounds for denial of relief on assumption of risk as a matter of law.