730 So.2d 197 (1997)
Jason JONES
v.
KAPPA ALPHA ORDER, INC., et al.
2960663.
Court of Civil Appeals of Alabama.
December 5, 1997.
Rehearing Denied January 9, 1998.
*198 Rosemari L. Claibon and J. L. Chestnut, Jr., of Chestnut, Sanders, Sanders & Pettaway, P.C., Selma, for appellant.
J. Tutt Barrett of Dean & Barrett, Opelika, for appellee Kappa Alpha Order, Inc.
Randall Morgan and Doy Leale McCall III of Hill, Hill, Carter, Franco, Cole & Black, Montgomery for appellees Kappa Alpha Order-Nu Chapter, Scott Belcher, Emmette Barron, Parke Keith, Jr., John Parker, Jason Hard, and Brad Sauls.
James A. Rives and Joana S. Ellis of Ball, Ball, Matthews & Novak, Montgomery, for appellee Duncan Morris.
Robert G. Poole of Whittelsey & Whittelsey, P.C., Opelika, for appellee Emmette L. Barran III.
PER CURIAM.
Jason Jones appeals from a summary judgment entered in favor of the defendants Kappa Alpha Order, Inc. (the national organization); Kappa Alpha Order, Inc.Nu Chapter (local chapter/fraternity); Parke Keith, Jr., John Parker, Emmette Barran, Duncan Morris, Scott Belcher, Jason Hard, and Brad Sauls (individual KA members). The Supreme Court transferred this case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
*199 The evidence, viewed in a light most favorable to Jones, suggests the following: On September 28, 1993, after being pursued and recruited by KA members, Jones became a pledge in the local KA fraternity at Auburn University. He was 18 years old at the time. The pledging process/initiation ceremony continued for an entire academic school year (September 1993 until June 1994). Jones testified that, before becoming a pledge, he had never been involved with a fraternity and had never heard of the term "hazing."
After Jones pledged, the KAs subjected him to numerous inappropriate hazing activities, which included the following: (1) the KAs made Jones dig a rather large ditch, which they filled with water, feces, urine, dinner leftovers, and vomit; (2) they forced Jones to get into the ditch on numerous occasions in the winter months and directed other pledges to dunk Jones in the ditch; (3) they forced Jones to eat "yerks" (a mixture of hot sauce, mayonnaise, butter, beans, etc.); (4) they told Jones that if anyone "puked" in the yerks, he would have to eat the yerks; (5) they subjected Jones to paddlings, which caused his buttocks to become swollen and to turn black and blue; (6) they forced Jones to get into a garbage can filled with urine, ice, and water; (7) they threw urine and feces on Jones; (8) they deprived Jones of sleep by forcing him to show up at the KA fraternity house at two o'clock in the morning; (9) on one occasion, at two o'clock in the morning, one of the individual KA members, who was intoxicated, began firing a pistol into the air; (10) they threw deer guts and blood on Jones; and (11) they pushed and kicked Jones down stairs during a ceremony referred to as the "gauntlet," causing him to suffer a broken right hand. We also note that another individual KA member initiated a fight with Jones, causing Jones to suffer a broken left hand. Jones was finally suspended from school as a result of failing grades.
On October 17, 1995, Jones filed a complaint against the national organization, the local chapter, and various individual KA members, alleging negligence and/or wantonness, in violation of § 16-1-23, Ala.Code 1975; negligent supervision; assault and battery; the tort of outrage; and conspiracy. Specifically, Jones alleged that he had suffered severe emotional distress, as well as physical injuries, as a result of the hazing activities. All the defendants moved for a summary judgment.
The trial court conducted a hearing on November 15, 1996, and entered a summary judgment in favor of the defendants on all claims, except the assault and battery claim. Regarding the assault and battery claim, the trial court determined that Jones had presented substantial evidence to indicate that Brad Sauls and Jason Hard, KA members, had committed an assault and battery against Jones. Regarding all other claims, the trial court determined that no genuine issue of material fact existed, based on its conclusion that Jones's "association with the fraternity was purely voluntary" and that he "could have stopped such activity at any time by merely resigning from the organization." The trial court made the summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P. Jones filed a post-judgment motion, which the trial court denied.
Jones appeals from the summary judgment, but only as it relates to his claims alleging negligence.
On review of this summary judgment, we must decide whether a genuine issue of material fact exists. If no genuine issue of material fact exists, then we must determine whether the defendants were entitled to a judgment as a matter of law. We must view the record in a light most favorable to the plaintiff, as the nonmoving party, and we must resolve all reasonable doubts against the defendants, as the parties moving for the summary judgment. McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957 (Ala.1992).
At the outset, we note that neither this court nor the Alabama Supreme Court has previously recognized a cause of action for hazing. Jones, however, contends that his complaint states a negligence cause of action against the individual KA members, based on a violation of § 16-1-23, Ala.Code 1975. The individual KA members, on the other hand, contend that § 16-1-23 is a criminal statute and that it cannot be construed as creating a civil cause of action for negligence.
*200 Section 16-1-23 provides that the practice of hazing is a Class C misdemeanor. It defines "hazing" as "[a]ny willful action taken or situation created ... which recklessly or intentionally endangers the mental or physical health of any student." The section further provides that "[n]o person shall knowingly permit, encourage, aid, or assist any person in committing the offense of hazing, or willfully acquiesce in the commission of such offense."
It is well settled that the violation of a statute or an ordinance may constitute negligence. Keeton v. Fayette County, 558 So.2d 884 (Ala.1989).[1] In order to state a cause of action for statutory negligence, Jones must show the following: (1) that the statute was enacted to protect a class of persons to which Jones belonged; (2) that Jones's injury was the kind of injury contemplated by the statute; (3) that the individual KA members violated the statute; and (4) that the individual KA members' violation of the statute proximately caused Jones's injury. Fox v. Bartholf, 374 So.2d 294 (Ala.1979).
It is clear that Jones was in the class of persons the statute was designed to protect, i.e., college students. Furthermore, Jones's complaint alleges sufficient facts to establish that he suffered the kind of injuries the statute was designed to prevent, i.e., injuries by which the mental or physical health of any student is intentionally endangered. It is undisputed that the national organization had a strict policy against hazing and that the individual KA members apparently violated that policy. Thus, the only issue left for review is proximate causation.
The general rule of proximate causation is that "[l]iability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury." Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala.1976). Consequently, we conclude that Jones presented substantial evidence of proximate causation to warrant submitting his case to a jury.
Based on the foregoing, we conclude that Jones has stated a cause of action based on the doctrine of negligence per se, based upon a violation of § 16-1-23, Ala.Code 1975.
The trial court entered the summary judgment in favor of the individual KA members, based on its conclusion that Jones had voluntarily chosen to remain a pledge and that he could have resigned from the fraternity at any time. Jones, however, contends that he did not feel free to end his participation in the fraternity.
After carefully reviewing the facts of this case, we conclude that in today's society numerous college students are confronted with the great pressures associated with fraternity life and that compliance with the initiation requirements places the students in a position of functioning in what may be construed as a coercive environment. Thus, we believe that fair-minded persons in the exercise of impartial judgment could reasonably infer that Jones's decision to remain a pledge, under the circumstances, was, in fact, not voluntary.
We now address the issue whether Jones has stated a cause of action based upon ordinary, or common law, negligence. In Buchanan v. Merger Enterprises, Inc., 463 So.2d 121, 125-26 (Ala.1984), our supreme court stated:
"The threshold issue in determining whether a common law negligence action will lie is to determine whether the defendant owed a duty to a class of persons which included the [plaintiff]. The duty issue is essentially a public policy question, i.e., whether the law should impose a requirement on the defendant that it do or *201 refrain from doing some act for the safety and well-being of the plaintiff. See Prosser, Handbook of The Law of Torts § 206 (4th ed.1971)....
". . . .
"The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised."
Applying the Buchanan rule, this court must determine whether a legal duty exists under the facts and circumstances of Jones's case. In doing so, we again turn to § 16-1-23, Ala.Code 1975, the criminal statute that prohibits hazing. It seems both appropriate and logical to determine why our legislature enacted this statute.
The statute expressly prohibits "[a]ny willful action ... which recklessly or intentionally endangers the mental or physical health of any student." (Emphasis added.) The statute further states that "[n]o person shall knowingly permit, encourage, aid, or assist any person in committing the offense of hazing." (Emphasis added.) The language of this statute clearly tends to suggest that a social policy does exist for the purpose of protecting our society's youth from the imminent dangers associated with hazing. The ruthless and deplorable tactics associated with hazing are unwarranted and should not be condoned by our society.
The ultimate test that must be applied, however, is whether the injuries that Jones suffered were foreseeable injuries that could have been prevented in the exercise of due care. After reviewing the facts of this case, we conclude that it was clearly foreseeable that Jones would suffer the kind of injuries he suffered when the KA members subjected him to such humiliating mental and physical abuse. We also cannot turn our heads to the fact that the actions of the individual KA members could have caused more drastic, life-threatening, injuries.
Thus, while it is true that § 16-1-23 does not expressly create a civil cause of action, it is, nevertheless, a maxim of statutory construction that penal statutes such as § 16-1-23 are to be strictly construed. The terms "wilfully" and "knowingly" are said to denote an intention to produce the result that actually comes to pass and are said to be mutually exclusive with the term "negligence." Vick v. Tisdale, 56 Ala.App. 565, 324 So.2d 279 (1975); see also 23A Words and Phrases "Knowingly" (1967) and 45 Words and Phrases "Wilfully" (1970).
Based on the foregoing, we conclude that the individual KA members had a duty to refrain from violating the known and strict policy established by the national organization. Thus, based on § 16-1-23, which prohibits hazing, as well as the fraternity's strict policy against hazing, we conclude that the individual KA members had a legal duty to conduct a pledging process/initiation ceremony free from hazing tactics, and that civil liability may properly arise from a breach of that duty.
Jones next argues that the national organization and the local chapter should be held responsible for the actions of the individual KA members, based on a holding both of them had a duty to protect Jones from foreseeable harm.
First, we address the summary judgment entered in favor of the local chapter. In response to the motions for a summary judgment, Jones submitted deposition excerpts and his affidavit. They show that at least three of the individual KA members were officers of the local chapter. Belcher served as president of the local chapter for much of Jones's pledgeship period. According to Jones's testimony, Belcher had knowledge of the hazing incidents alleged in his complaint. In addition, Hard and Barran both served as vice presidents/pledge trainers, and, according to Jones's testimony, they arranged and witnessed many hazing events. For instance, Jones testified that Hard hit and pushed him and knocked him into walls, ordered him into the ditch on more than one occasion, and arranged the 2:00 a.m. meetings. Furthermore, many of the hazing events took place at or near the KA fraternity house.
The substantial evidence presented by Jones in opposition to the motions for summary judgment clearly raises a genuine issue of material fact regarding whether the local *202 KA chapter encouraged, authorized, or ratified the hazing activities alleged by Jones. Thus, as to the local KA chapter, the summary judgment must be reversed. See Rogers v. Flowers Specialty Foods, 621 So.2d 1339 (Ala.Civ.App.1993).
Regarding the national organization, it appears that Jones failed to present substantial evidence that it encouraged, authorized, or ratified the alleged hazing. It is well settled that "in the absence of authorization or ratification by its members, an association is not liable for intentional torts by a member or members." Rothman v. Gamma Alpha Chapter of Pi Kappa Alpha Fraternity, 599 So.2d 9, 10 (Ala.1992). Based on the foregoing, we conclude that the summary judgment was proper as to the national organization.
Accordingly, we affirm the summary judgment as it relates to the national organization; we reverse the judgment as it relates to the individual KA members and the local KA chapter; and we remand the case to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES and MONROE, JJ., concur.
ROBERTSON, P.J., and CRAWLEY, J., concur in the result.
THOMPSON, J., concurs in part and dissents in part.
THOMPSON, Judge, concurring in part and dissenting in part.
I would affirm the summary judgments as to the individual defendants and the local chapter; therefore, I must respectfully dissent from the majority opinion to the extent that it reverses the summary judgments as to those parties.
There is no civil cause of action for hazing, under present Alabama law. Although the Alabama legislature expressly created a civil cause of action for all felonious conduct by enacting § 6-5-370, Ala.Code 1975, anyone convicted of violating § 16-1-23 is guilty of a Class C misdemeanor. A civil cause of action for a violation of § 16-1-23 may not be created through § 6-5-370; therefore, we must look to the intent of the legislature in enacting § 16-1-23 to determine whether that section creates civil liability for a violation of the statute.
The legislature expressly stated that its intent in enacting § 16-1-23, Ala.Code 1975, was "[t]o prohibit hazing of any student of any school, college, university, or other educational institution in this state; to define the term hazing, to set criminal penalties for violating this act, and to deny state funding in certain instances." Ala. Acts 1981, Act No. 81-824. There is no mention of any intent by the legislature to create civil liability for hazing. The legislature could have created a civil cause of action under this statute, but it did not choose to do so. Section 16-1-23 never mentions the existence of civil liability for conduct that constitutes hazing; that section expressly provides only for criminal penalties for a violation of the statute.
I would also note that I agree with the trial judge's finding that Jones's participation in the fraternity activities was voluntary and that he could have halted his participation in fraternity activities at any time. I disagree with the statement in the opinion that reasonable minds could differ regarding whether, under these facts, Jones's decision to remain a pledge was voluntary. Jones's own testimony was that his choice to remain was voluntary, that he was never coerced by any member of the fraternity to remain in the pledge class, and that he knew that several members of his pledge class had quit the fraternity.
The main opinion concludes that the "great pressures associated with fraternity life" could place "students in a position of functioning in what may be construed as a coercive environment." 730 So.2d at 200. I do not agree with any conclusion that would, in essence, determine that peer pressure can totally absolve a college student of the responsibilities of his own decisions. The Supreme Court of Alabama quoted with approval the following from an opinion of an Indiana appellate court:

"College students and fraternity members are not children. Save for a very few legal *203 exceptions, they are adult citizens ready, able, and willing to be responsible for their own actions. Colleges and fraternities are not expected to assume a role anything akin to in loco parentis or a general insurer."
Rothman v. Gamma Alpha Chapter of Pi Kappa Alpha Fraternity, 599 So.2d 9, 11 (Ala.1992) (quoting Campbell v. Board of Trustees, 495 N.E.2d 227, 232 (Ind.App.1986) (emphasis added)).
Because I do not believe that a civil cause of action for hazing exists, I believe that the summary judgments in favor of the individual defendants should be affirmed. I also believe that in the absence of civil liability on the part of the individual fraternity members, the local chapter cannot be held liable pursuant to § 16-1-23, Ala.Code 1975, for the actions of its members. Also, as to the local chapter's liability, I believe that Jones failed to introduce any evidence tending to show that the chapter authorized, encouraged, or ratified the actions of its individual members; thus, it cannot be held responsible for any intentional torts of its members. See Rothman v. Gamma Alpha Chapter, supra.
The hazing alleged in this case may be prosecuted criminally pursuant to § 16-1-23. Further, other civil causes of action may also be available to Jones for this conduct; there is no need to judicially create a civil cause of action under § 16-1-23. I would emphasize that Jones's claim for assault and battery, related to his broken hand, is still pending in the trial court.
Although I do not condone hazing or the conduct alleged in this case, I believe that it is the function of the legislature, if it so chooses, to create a civil cause of action for hazing. I do not believe that it was the intent of the legislature in enacting § 16-1-23 to create civil liability for a violation of that statute; therefore, I would affirm the summary judgments in favor of the individual defendants and the local chapter. I concur in the affirmance of the summary judgment for the national organization.
NOTES
[1] Contrary to the dissent's contentions, the violation of a statute creates an action of negligence per se as long as the doctrine's requirements are met. There is no requirement that the legislature expressly create a civil cause of action for negligence per se to apply. See 57A Am.Jur.2d Negligence § 727 (1989) (stating that "[t]he negligence per se doctrine does not depend on the grant of a private right of action by the legislature."); see generally Alabama Power Co. v. Dunaway, 502 So.2d 726 (Ala.1987); Fox v. Bartholf, 374 So.2d 294 (Ala.1979) (cases applying the doctrine of negligence per se).